### ALONZO SEWARD *v.* SESSIONS L. HEFLIN.

Where the defendant, in the absence of the plaintiff, but at the proper day, set apart property in satisfaction of a contract, of which the plaintiff was the legal assignee and known to be so by the defendant, and there was a subsequent conversion of the property, on the same day, by the defendant, it was held, that the plaintiff had sufficient right of property and possession to enable him to maintain trover against the defendant therefor.

Where an action of trover is tried in the county court upon issue to the court, and judgment is rendered for the plaintiff, the decision of the court, in finding the fact of conversion, cannot be reversed by the supreme court, if there was any evidence tending to prove that fact.

Evidence, that the property had been taken from the premises of the defendant by an officer, under a claim of title adverse to the plaintiff, and that the defendant pointed out the property to the officer, and refused to keep it for him, saying he wanted no trouble about it and had rather the property should be taken away, and permitted his minor son to assist the officer in taking it away, and that the defendant had taken an indemnity for turning out the property to the officer, does tend to show a conversion of the property by the defendant.

Where a claim, for which one summoned as trustee is sought to be held chargeable, has been, before the service of the trustee process, assigned by the principal defendant to a third person, and this is known to the trustee, and the trustee makes a full and fair disclosure of all the facts within his knowledge, and uses all reasonable exertions to preserve the right of the assignee, who is absent, it may be that a judgment, holding the trustee chargeable, would be a protection to him against such assignee. But if the trustee make but a partial disclosure, so that the court have no opportunity to judge of the real merits of the case, and there be any indications of collusion between him and the creditor, the judgment will furnish him no protection whatever.

TROVER for a cow and heifer. Plea, the general issue, with notice of special matter of defence, and trial by the court, September Term, 1847,—ROYCE, J., presiding.

On trial the plaintiff proved, that sometime between the thirtieth of October and the ninth of November, 1841, one Johnson leased a cow to the defendant, to double in four years, that is, to be returned at the expiration of four years with her first calf; that the calf, which the cow brought in the spring of 1842, died without fault of the defendant, who continued to keep the cow; that October 25, 1843,

Seward *v.* Heflin.

Johnson sold to the plaintiff his interest in the contract with the defendant, and both Johnson and the plaintiff gave notice thereof to the defendant within a few days; that subsequently, during the same autumn, the defendant sold the cow to one Taylor, under a license from the plaintiff and Johnson and an agreement that he would replace her by another as good; that the defendant, not long after, did purchase the cow and heifer in question, but did not designate and set them apart, as cattle with which to fulfil the contract, until the morning of November 8, 1845; that on the thirtieth or thirty first day of October, 1845, the plaintiff went to the defendant's house and called upon him for the cattle due on the contract; that the defendant refused to deliver them then, saying that the time was not out until the eighth of November, and the plaintiff left, saying that he should have to come after them again; that in the morning of the eighth of November the defendant set apart the cattle in fulfilment of the contract; and that in the course of the same day the plaintiff again went to the defendant's house and called for the cattle, and the defendant then told him, (which was the fact,) that one Robinson, an officer, had just been there and seized and driven them away upon an execution in favor of A. & J. Adams against the said Johnson, obtained in a suit wherein the defendant had been summoned as trustee, had disclosed and been adjudged chargeable; —and it appeared that Robinson seized and drove away the cattle, after they had been designated and set apart by the defendant, as above mentioned.

The files and records in the trustee suit were given in evidence, from which it appeared, that A. & J. Adams sued out a trustee process against Johnson, summoning the defendant as trustee, which process was dated August 20, 1845, and made returnable September 29, 1845; that at the return day judgment was rendered against Johnson, by default, for $17,68 damages, and costs; that at the same time the defendant, as trustee, made a disclosure in writing, in which he stated, that about the eighth of November, 1841, he took a cow of Johnson, for which he was to return as good a cow and a three year old heifer with calf on or about the eighth of November, 1845, that about two years before the time of disclosure, or at the time Johnson failed, Alonzo Seward showed to him a line from Johnson, stating that Seward was to have the cow, and that Seward then said,

that Johnson had failed and he wanted to save so much for him; that thereupon the court adjudged, that the defendant was liable as trustee of Johnson, according to his disclosure, and that he delivered the cow and heifer to the officer upon the execution to be issued in that suit; that execution was issued, and delivered to Robinson, as deputy sheriff; and that Robinson levied the execution upon the cow and heifer in question and duly advertised and sold them and applied the avails upon the execution.

It appeared, that when Robinson went to levy upon the cattle, the defendant showed them to him, they then being in the road near the defendant's house, and that the defendant declined to keep them for Robinson, saying he wanted no trouble about it and had rather that Robinson should take them away, and that Robinson hired a minor son of the defendant, then present, to assist him in driving them away. It also appeared, that the attorney of A. & J. Adams had agreed to indemnify the defendant for turning out the cattle to Robinson.

Upon these facts the county court rendered judgment in favor of the plaintiff for the value of the cow and heifer. Exceptions by defendant.

*L. E. Pelton* and *H. R. Beardsley* for defendant.

1. We insist, that the proceedings in the trustee suit constitute a full defence to any action, in favor of Johnson, or his assignee, for the property therein disposed of, the defendant having made therein a full disclosure of all the facts in his knowledge, without fraud or collusion. *Wood* v. *Partridge*, 11 Mass. 488. *Andrews* v. *Herring*, 5 Mass. 210. Rev. St. c. 29, § 38. *Perkins* v. *Parker*, 1 Mass. 117. *Clark* v. *Brown*, 14 Mass 271. Were we trying the trustee action, the defendant would be adjudged liable, on the evidence before the justice court. *Foster* v. *Sinkler & Tr.*, 4 Mass. 450. *Decoster* v. *Livermore*, 4 Mass. 101. *Safford Co.*, v. *Hull*, Brayt. 231. *Perkins* v. *Parker*, 1 Mass. 117. *Hull* v. *Blake*, 13 Mass. 153. *Clark* v. *Brown*, *Tr.*, 14 Mass. 271. To avoid this defence the plaintiff should show either fraud, or concealment of facts within his knowledge, on the part of the defendant. *Huntington* v. *Bishop*, *Tr.*, 5 Vt. 186. Rev. St. c. 29, §§15, 23. Acts of 1841, p. 6, § 2. *Gordon* v. *Webb & Tr.*, 13 Mass. 215. It was

Seward v. Heflin.

not the duty of the trustee to cite the present plaintiff, under the statute, but of the court, or of the plaintiffs in that suit; and this was not necessary, if there was sufficient evidence to show the assignment fraudulent without doing so.   Rev. St. c. 29, §16.   Acts of 1841, p. 6, § 2.

2. But, if the trustee proceedings are not a justification, we insist, that trover will not lie against the defendant.   The plaintiff, in trover, must show title to the particular chattel sued for.   And the defendant, if liable in any case, was only liable for the non-performance of his special agreement to return another cow as good as the cow he had sold, and not in trover for the cattle he attempted to deliver.   For the case finds, that the defendant took the cattle of Johnson; and these cattle, to become either Johnson's, or the plaintiff's, by the act of the defendant, must have been delivered to Johnson, or to the plaintiff, at Johnson's place of residence, under his implied agreement so to deliver them.   Chip. on Cont. 24.   If not tendered at Johnson's residence, then Johnson, or the plaintiff, must consent to receive them, before the property would vest in the plaintiff.   The court has not found, that these cattle were of suitable quality, or value, to fulfil the contract, provided they had been delivered at the proper place.

If the cattle ever became the property of the plaintiff, it must have been when the plaintiff designated them and turned them into the highway on the morning of November 8, 1845; and we insist, that he performed no act after that time, which would amount to a conversion.   Should the plaintiff insist, that the act of rendering judgment in his favor was finding the fact of conversion, we answer, that the court have certified what facts were found; and the decision of the court, founded thereon, was deciding a question of law and may as well be revised, as if the decision had been upon a special verdict.   *Adm'r of Chapin* v. *Wardner*, 15 Vt. 560.   *Phelps* v. *Stewart et al.*, 12 Vt. 256.

*N. L. Whittemore* for plaintiff.

The case shows, that the defendant fulfilled his agreement with the plaintiff, by substituting the cow in question, before she was taken by Robinson, for the cow which he had before sold.   It is immaterial how short the time was previous to the taking; the prop-

erty, by the act of the defednant, became vested in the plaintiff, and he could sustain this action for the conversion.   The heifer was set apart for the plaintiff at the same time, in pursuance of the contract, and became his property.

The trustee process does not aid the defendant.   He had previous notice of the transfer, and it was his duty to have seen that the plaintiff was notified and called into court to sustain his right.   The plaintiff cannot be prejudiced by proceedings, to which he was not a party, and of which he had no notice.

If there were any evidence tending to prove that the defendant converted the property, or in any manner aided in the conversion, this court cannot reverse the decision of the court below ; for it was their province alone to decide upon the weight of evidence.   It appears, that the defendant went with the officer, and pointed out the cattle, and requested Robinson to take them away, as he wanted no trouble about them, and permitted his minor son to assist in driving them away, and that, to indemnify himself against the consequences of these acts, he took a bond of indemnity from the attorney.   Upon this evidence the court found the fact, that the defendant converted the property ; and this finding cannot be revised by this court.   2 D. Ch. 36.   11 Vt. 221.   13 Vt. 103.   12 Vt. 494.

The opinion of the court was delivered by

HALL, J.   Upon the facts found by the county court we have no doubt the plaintiff had a sufficient property in the cow and heifer to maintain trover for them.   Having been set apart and turned out by the defendant in satisfaction of a contract, of which the plaintiff was the legal assignee, and known to be so by the defendant, the plaintiff thereby became the owner of the cattle ; and having also the right of possession, he might well maintain the action.

We are also satisfied, that the objection of the defendant, of the want of proof of a conversion, is not well taken.   The county court, by rendering judgment for the plaintiff, have found the fact of conversion ; and we cannot reverse their judgment, if there was any evidence tending to prove such fact.   Their decision upon the weight of evidence is as conclusive, as the finding of a jury.   The conduct of the defendant, at the time the cattle were taken away under a claim of title adverse to the plaintiff, in connection with the fact,

that he had obtained an indemnity for turning them out on such claim, did very strongly tend to connect him with the conversion; and we therefore hold, there was no error in the county court in that respect.

The important question in the case, however, regards the effect, that should be given to the proceedings under the trustee process. The defendant having, before the commencement of this suit, been adjudged the trustee of Johnson, the assignor of the plaintiff of the contract, under which he claims the cattle, and they having been taken from the defendant by virtue of the judgment on the trustee process, it is insisted he is discharged from any liability to the plaintiff.

That the delivery of the cattle to the officer, upon the execution issued on the trustee judgment, would be a discharge of the defend-fendant as to any claim of Johnson, there can be no doubt. Rev. Stat. chap. 29, sec. 38. But the plaintiff was a stranger to the whole proceeding, and whether it was a discharge as to him may be a different question. If the plaintiff's claim to the property had not been derived from Johnson, but had been originally adverse to and independent of his title, the principle of *res inter alios acta* would apply in its full force. And so far as the rights of the plaintiff are concerned, it is difficult to find a reason, why it should not now apply. It is contrary to the plainest principles of justice, that he should be bound by a judgment, to which he was not a party, and to which he had no opportunity to object. And were his rights alone to be regarded, I should have no hesitation in saying, that no proceeding, to which he was not a party, and had no opportunity of being a party, should be binding upon him. But the trustee proceeding is compulsory on the trustee; and where, without fault on his part, he is forced to pay money to the creditor of a principal debtor, it would be the highest injustice to him, to compel him to pay it again to another. I am not prepared to say, if a trustee make a full and fair disclosure of all the facts within his knowledge, and use all reasonable exertions to preserve the rights of an absent assignee, that a judgment against him shall not be a protection to him against such assignee. But if the trustee make but a partial disclosure, so that the court have no opportunity to judge of the real merits of the case, and there be any indications of collusion between

him and the creditor, the judgment should furnish him no protection whatever.

From the facts disclosed in the bill of exceptions in this case I think the county court were well justified in disregarding the trustee proceeding. The trustee's disclosure was deficient in one important particular. He omitted entirely to state, that, after notice to him of the transfer of the claim to the plaintiff, he had made an agreement with the plaintiff, by which he was to dispose of the cow first taken and substitute another cow and heifer for her; and in his disclosure he states a declaration of the plaintiff to him, to the effect that the assignment was all a sham,—for the benefit of Johnson. If the plaintiff told him this,—not in the presence of any other person,—and he is therefore unable to prove it, it is certainly unfortunate for him. But on making such a disclosure he must have known, that he would be adjudged trustee; and, before suffering judgment to be rendered against him, he ought to have done all in his power to apprise the assignee, that his claim was about being compromitted. This he might have done, by applying to the court to issue a notice to Seward, the assignee, to appear and maintain his claim. Rev. Stat. chap. 29, sec. 16. It would seem, from the papers in the case, that Seward was probably within the reach of process, perhaps in the same town in which the court was held. If he had not procured a citation from the justice, he might, at least, on the service of the writ, have endeavored otherwise to inform him of the process, that he might appear and make his claim. It would seem, from the case of *Spafford* v. *Page*, 15 Vt. 490, that, if Seward, in this case, had had even informal notice of the proceeding, so that he might have appeared and maintained his rights, the judgment would have been conclusive against him. There can be no doubt, that a citation from the justice to appear and maintain his claim would have furnished a perfect protection to the trustee, whatever the decision of the justice might have been, and whether the assignee had appeared, or not. He would then have been a party to the judgment and bound by it. No attempt to notify Seward, either informally, or otherwise, is shown; and I think, from the facts shown before the county court, and from the facts which might and ought to have been shown before the magistrate by the trustee, if he had intended, in any manner, to regard the rights of the as-

signee, it is but fair to infer, that the whole trustee proceeding was a private matter between the creditor and the trustee, not intended to be communicated to the assignee, but merely designed to deprive him unknowingly of his property, by a transfer of it under the forms of law to another. The subsequent conduct of the trustee, in putting off the plaintiff to another day, when he came for the cattle, without informing him of the trustee process, and his taking an indemnity from the creditor of Johnson for turning out the property, tend strongly to confirm the general view of the case already taken; and, on the whole, we are well satisfied, that the judgment against the trustee was not such an one, as ought to protect him from the present action.

The judgment of the county court is therefore affirmed.