**First Wisconsin Mortgage Trust v. Wyman's, Inc., Mt. Snow Development Corporation, and Catamount National Bank**

[428 A.2d 1119]

No. 19-80

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed February 10, 1981

*Keyser, Crowley, Banse & Kenlan,* Rutland, for Plaintiff.

*Frederick M. Reed,* Williston, for Wyman's.

*Arthur J. O'Dea, P.C.,* Manchester Center, for Catamount.

**Barney, C.J.** Defendant Wyman's, Inc., was a creditor of defendant Mt. Snow Development Corporation. The defendant Catamount National Bank had money on deposit in the name of the Mt. Snow Development Corporation. Wyman's obtained a default judgment against Mt. Snow in Washington Superior Court and, as a result, trustee process was served on Catamount on June 4, 1976.

On June 14, 1976, Catamount made disclosure that it had money on deposit in the name of Mt. Snow, but that the account, "by virtue of certain documents of transfer," was claimed by plaintiff First Wisconsin Mortgage Trust. Among those documents put in evidence was a corporate resolution directing that the name of the account be in the following form: "Mt. Snow Development Corporation as Managing Agent for First Wisconsin Mortgage Trust." This resolution represented action taken at a meeting of the Board of Directors held on June 14, 1976. The Catamount Bank had in fact changed the name of the account on June 10, 1976. Catamount's disclosure contended that it ought not to be adjudged trustee. In August, 1976, First Wisconsin moved to intervene in the trustee suit, but the trial court denied First Wisconsin's motion, on the ground that First Wisconsin was not properly registered in Vermont and therefore could not maintain an action in Vermont. First Wisconsin subsequently registered properly on August 18, 1976, after its motion for reconsideration of the denial was denied.

In August of 1977, Wyman's moved for judgment against the trustee based on the assets disclosed. This was followed by a reply filed by Catamount stating it had no objection to such a judgment, but asking for counsel fees and costs. Judgment against the account in Catamount was entered in favor of Wyman's on September 13, 1977.

A year prior to that judgment, in August of 1976, this action had been commenced in Bennington Superior Court to present First Wisconsin's claim of ownership in the funds in the Catamount Bank and to challenge their disbursement to Wyman's. Catamount timely responded to the complaint, but Wyman's answer was not filed until the next year, in No-

vember of 1977, after the judgment against Catamount as trustee had issued in the Washington Superior Court.

The matter was heard in December, 1978, by court, and all of the foregoing facts are set out in the findings or appear from the record on file. The hearing resulted in a judgment dismissing First Wisconsin's action, and dismissing the counterclaim of Catamount seeking judgment as to ownership of the funds in question, on the basis that Catamount had been adjudged to have no liability to First Wisconsin. First Wisconsin has appealed from the order dismissing its action.

To avoid unnecessarily complicating the recitation of the dispute between the parties, a number of ancillary facts have not been stated. We will refer to them as necessary in dealing with the issues before us. They relate generally to the effect of attempts to intervene and to the binding effect of trustee adjudications involving this plaintiff, this trustee and this very account in other cases brought to the attention of the trial court in this action.

The resort by a creditor to an asset held by another and owed to his debtor, known as "trustee process," dates back to the earliest days of Vermont. In 1835 it was changed from an independent writ available only against absconding debtors or concealed assets to a regular incident of a writ of attachment. *Divoll* v. *Nichols,* 70 Vt. 537, 538, 41 A. 972, 972–73 (1898). Since then, although procedures have been refined and clarified from time to time by statutory amendment and court rule to bring those procedures into line with enlarged constitutional concerns, the basic process has remained essentially the same. 12 V.S.A. § 3011, V.R.C.P. 4.2.

Trustee process is a device by which a judgment creditor may, by process, reach certain obligations due the judgment debtor. The logic of this resort needs no explanation, but there is concern in the statutory pattern, as there should be, for the protection of the third-party trustee, and perhaps other claimants who may be affected by the litigation.

A close definition of the right that can be reached, and also of the obligation of the debtor-trustee when brought into the litigation, is essential. Both the statutes and our cases emphasize that the debt must be one actually owed to the defendant at the time of service of trustee process, or which

comes into his hands before he files his disclosure. *Island Pond National Bank* v. *Chase,* 101 Vt. 60, 62, 141 A. 474, 474–75 (1928); 12 V.S.A. §§ 3013, 3018 and 3019. The exception is when the trustee fails to fulfill his responsibilities under the law and therefore puts his own resources at stake for the benefit of the plaintiff. *State* v. *Rogers,* 123 Vt. 422, 425–26, 193 A.2d 920, 923 (1963).

.Otherwise the reach of trustee process is directed to indebtedness in fact due the defendant. 12 V.S.A. § 3018. The principal controversies have involved alleged attempts to change the ownership of the debt after service of the trustee process, and controversies about the eligibility of the debt under the applicable statutes. This last issue is not in this case;

An examination of the evidence and findings below discloses that the lower court saw the problem as an attempt to transfer title after service of the trustee process. This decision rested on a determination that the deposit involved belonged to the Mt. Snow Development Corporation at the time process was served on the Catamount Bank, and that the change in designation by the corporate resolution of June 14, 1976, already noted, represented a change in title. This is not supportable.

The trial court and some of the witnesses and attorneys viewed the following provision of the management agreement as requiring that the deposit account in question be in an account maintained by First Wisconsin:

> (b) All gross revenues from the business operated on the Property shall be promptly deposited by MSDC in an account maintained with First Wisconsin National Bank of Milwaukee, Milwaukee Wisconsin or any other bank designated by FWMT, and all expenditures made by MSDC for the operation and management of the business on the Property shall be in the form of disbursements from such account. All checks or other disbursements from such account shall be countersigned by FWMT or its designee.

Since construction of the unambiguous provisions of a contract is done by the court as a matter of law, we so review

it here. *William Feinstein Brothers, Inc.* v. *L. Z. Hotte Granite Co.*, 123 Vt. 167, 170, 184 A.2d 540, 542 (1962). The quoted provision required Mt. Snow Development Corporation to deposit the money in an account in the First Wisconsin National Bank itself, or any other bank designated by First Wisconsin Mortgage Trust. It does not require that the account be joint with or maintained in the name of First Wisconsin. Paragraph 1 of the management agreement acknowledges that First Wisconsin has acquired possession and ownership of the Mt. Snow Ski Resort property and is entitled to conduct the business according to its sole discretion. Mt. Snow Development Corporation is retained under the agreement merely to manage the operation.

The findings also report that the trial court is unable to find what part of the deposit belongs to First Wisconsin. This issue comes about because, at one time, there was uncertainty as to whether the resort would be open for business in the 1975–76 season. Since it might be necessary to refund advance deposits for rooms or season ticket purchases, Mt. Snow was given special authority, in those cases, to return the funds to the customers without a countersignature from First Wisconsin. This was a temporary situation which ended when the resort did, in fact, open in 1975–76. The testimony, unrefuted and unquestioned, reported that any money representing advance reservations or season ticket money had all become part of the regular operating funds by December, 1975. Since the critical time relating to the ownership is June, 1976, the trial court's finding is contrary to the evidence. Furthermore, until the money in question was eligible for transfer into operating funds, it did not belong, in the ownership sense, to Mt. Snow Development Corporation, but rather was possessed by Mt. Snow subject to a right of refund if the operation failed to function during the then upcoming season. At the very point where the customers lost their right to seek refunds of those room deposits and season ticket fees the money became First Wisconsin's.

Once process has been served, heavy responsibilities rest on the trustee, in this case Catamount National Bank. Its first obligation is to serve its disclosure within 30 days after the service of trustee process on it, unless the trial court directs otherwise. V.R.C.P. 4.2 (f). In disclosing, the trustee is

held to what might be termed a fiduciary level of responsibility with respect to the assets allegedly belonging to the defendant, and must hold and account for them. *State* v. *Rogers, supra,* 123 Vt. at 425, 193 A.2d at 923.

There are three possible kinds of disclosure. The first simply reports under oath that the trustee in fact has in its possession no goods, effects or credits of the defendant. 12 V.S.A. § 3064. The second sets out a listing of the goods, effects or credits of the defendant in possession of the trustee. 12 V.S.A. § 3065. The third also sets them out, but indicates that such goods, effects or credits, or some of them, are not proper for surrender to the plaintiff because of some intervening right or claim, such as a contract claim of the trustee against the defendant, 12 V.S.A. § 3076, or the claim of a third party, 12 V.S.A. § 3132, or is subject to some statutory exemption, under 12 V.S.A. §§ 3020, 3021, 3023 and 3024, for example.

■ If a trustee fails to disclose as the statutes require, it may be defaulted. 12 V.S.A. § 3062. In such case, the goods, chattels and estate of the trustee itself are chargeable for the amount of the judgment recovered by the plaintiff. 12 V.S.A. § 3063. Thus, the trustee has not only a derivative duty to adequately present the exact nature of any obligations claimed to be trusteed, but a very direct interest in proper disclosure for the protection of its own assets from assessment. This result may follow not only from a total failure to disclose, but also if the disclosure is incomplete or negligently inadequate. *Parker* v. *Wilson,* 61 Vt. 116, 118, 17 A. 747, 747–48 (1888); *Holmes* v. *Clark,* 46 Vt. 22, 27 (1873).

■ The trustee is given the protection of the right to offer in defense all of the rights of a third-party claimant to the fund, such as an assignee. *Hawley* v. *Hurd,* 72 Vt. 122, 124, 47 A. 401, 402 (1900). Such rights must have accrued before the service of the trustee process, because such service freezes the funds and forbids any change in ownership pending determination of the responsibility of trustee. *J. W. Ellis & Co.* v. *Goodnow,* 40 Vt. 237, 240–41 (1867); 12 V.S.A. § 3013.

The application of that rule seems to be central to the decision of the trial court denying First Wisconsin its deposit. There is no doubt that a valid judgment holding Catamount

trustee would shield it from First Wisconsin's claim. 12 V.S.A. § 3081. As we have already noted, this protection is conditioned on a full and good faith disclosure. *Parker* v. *Wilson, supra.*

The facts reveal that there was no change of ownership after service of the trustee process, since the deposit was demonstrated to be, at all times, the property of First Wisconsin. Therefore, the examination must turn to the circumstance that the true state of the title was unclear to others, including, perhaps, even the trustee, Catamount.

We have already seen that it is the proper purpose of trustee process to pursue true assets of the debtor, here Mt. Snow Development Corporation. When the trustee does not know the true state of ownership, its duty to disclose is measured by the state of its knowledge. If it believed at the time of disclosure that the account was, in fact, the property of Mt. Snow, that should be its response. If it was in doubt, as it was, it should say so, as it did. When it became aware of the true state of ownership, it should amend its disclosure to put the new information before the court. See 6 Am. Jur. 2d *Attachment and Garnishment* § 405.

But it must do more. The trustee also must state all the facts material to the inquiry of who owns the property, and take those steps which are likely to give the third-party claimant an opportunity to assert his claim. *Enright* v. *Beaumond,* 68 Vt. 249, 251, 35 A. 57, 57 (1894); see *Seward* v. *Heflin,* 20 Vt. 144, 150 (1848). In this case, the third-party claimant, First Wisconsin, was denied the opportunity to intervene in the trustee process proceeding in the Washington Superior Court. We view that denial as crucial, since, as a result, First Wisconsin was denied an opportunity to assert its claim. The trustee, Catamount, knew of First Wisconsin's claim and should have marshalled the facts to enable the trial court to determine the true owner of the account. There was no barrier to First Wisconsin's testimonial participation from the witness chair, or, if appropriate, by depositions and affidavits. Indeed, Catamount could have joined First Wisconsin in the action under the interpleader provisions of V.R.C.P. 22.

Instead, without carrying forward this obligation, the trustee here sought refuge in the judgment order of the trial

court directed to it as trustee, without insuring that all of the ingredients, legal and factual, necessary to a correct result, were urged in the court. In fact, ultimately, the trustee consented to the entry of a trustee judgment directing that the assets of First Wisconsin be paid to Wyman's in satisfaction of a debt owed to Wyman's only by Mt. Snow.

It is quite apparent that that judgment came into being based on the misapprehension of the trial court that there had been an attempt to change the true status of the title to the account after service of the trustee process. Since the evidence which should have dispelled that error, and, if necessary, the appeal that would have tested its legal basis, were not pressed by Catamount, it is not entitled to the protection of 12 V.S.A. § 3081 and First Wisconsin is entitled to be paid the amount of the claimed account.

By way of defense, it is also contended that First Wisconsin's failure to pursue its attempted intervention in the original proceeding in Washington County, which resulted in the trustee judgment against Catamount, bars a judgment in its favor here. The authority for such participation is found in 12 V.S.A. § 3132. The language is permissive, and, presumably a trial court may determine, for reasons of cost or other appropriate concerns, that the burden of advancing the claimant's claim can as fully be fulfilled by the trustee, without adding the claimant as party.

■ The defendants argue, however, and the trial court found, that the Washington Superior Court judgment was res judicata with respect to First Wisconsin's rights to the account in question, reasoning that First Wisconsin could have intervened if it had filed properly with the Secretary of State. An unsuccessful motion to intervene does not operate to bind the movant to the judgment. *Brown* v. *Wright*, 137 F.2d 484, 487 (4th Cir. 1943); see Restatement (Second) of Judgments § 78, Reporter's Notes, Comment b, at 6 (Tent. Draft No. 2, 1975). In this case, the Washington Superior Court denied First Wisconsin's motion to intervene. As a result of that denial, First Wisconsin is not bound by the judgment.

■ The defendant also argues that First Wisconsin was in privity with Mt. Snow, so that it was, in essence, a party to the Washington Superior Court proceeding. The test

for privity, for the purposes of res judicata, is whether the parties have really and substantially the same interest in the property in issue. *Cutler* v. *Jennings*, 99 Vt. 85, 90, 130 A. 583, 584 (1925). Mt. Snow was not representing First Wisconsin as a defendant in the Washington Superior Court case; rather it was being sued on a debt which it owed, in its own name and as a separate entity, to Wyman's, Inc. Mt. Snow and First Wisconsin did not have the same interest in that suit.

In the Washington Superior Court case First Wisconsin's participation was denied. The correctness of that ruling is not before us, but given the discretionary approach of the statute allowing intervention by third-party claimants, the burden on the trustee is not lessened or transferred, and it cannot be held to be a waiver of rights by the claimant to fail to continue to correct a ruling under a statute that gives him neither an absolute right nor a duty to maintain his claim on his own behalf.

*The judgment of the trial court dismissing the plaintiff's case is reversed, and the cause is remanded for an order granting judgment in First Wisconsin Mortgage Trust's favor against the Catamount National Bank.*