# Marble Bank v. Jack Heaton, Frank Punderson, Jr., and Gerald P. Cantini and Francis W. Murphy, Trustees of the Jack Heaton Trust

[624 A.2d 365]

No. 92-375

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 26, 1993

*Timothy Martin* of *Carroll, George & Pratt*, Rutland, for Plaintiff-Appellee.

*Clarke A. Gravel* and *Dennis R. Pearson* of *Gravel and Shea*, Burlington, for Defendants-Appellants.

**Dooley, J.** The trustees of the Jack Heaton Trust appeal from an order of the Rutland Superior Court requiring them to pay a judgment held by plaintiff Marble Bank against defendants Jack Heaton and Frank Punderson. We reverse and remand.

On May 29, 1991, plaintiff obtained a judgment against defendants Heaton and Punderson in the amount of $69,019, based on a loan guaranty made by defendants on behalf of H.P.P., Incorporated. Unable to collect directly from defendants, plaintiff issued trustee process, pursuant to V.R.C.P. 4.2(k), to a number of entities it believed held funds or property belonging to one or both defendants. Trustee process was issued on December 31, 1991, to Gerald Cantini and Francis Murphy, trustees of the Jack Heaton Trust. The trustees filed a disclosure statement, averring that they did not know whether they held "goods, effects, credits or other property . . . subject to trustee process," and explained:

> We are Trustees of a certain irrevocable Trust Estate which is to be administered for the health, well-being and maintenance of Jack E. Heaton . . . . Our duties and obligations under the Heaton Trust Agreement compel us, in our sole and absolute discretion, to apply the net income of the Heaton Trust for the health, well-being and maintenance of Jack E. Heaton. Jack E. Heaton is not the sole beneficiary of the Heaton Trust. It is further provided that no interest of any beneficiary be subject to claims of creditors or liable to attachment, execution, or other process of law for the satisfaction of any beneficiary's obligations. The assets of the trust are not fixed, but change frequently.

The trustees took the position that they could not subject the assets of the trust to trustee process and referred the question of their liability to the court. They disclosed that on the day they were served, and on the day of disclosure, trust assets were about $4,600,000 and exceeded liabilities by about $400,000. The trust agreement provides that the trustees may

pay income to Jack Heaton and may withdraw annually an amount equal to five percent of the trust principal for the benefit of the beneficiary. On the death of Jack Heaton, his wife becomes the beneficiary, and on her death, his children.

Plaintiff subpoenaed the trustees to a hearing on April 2, 1992. In a memorandum filed the day before the hearing, plaintiff argued that the trust assets had been fraudulently conveyed to the trust, and that under 12 V.S.A. § 3143 it was entitled to payment of the judgment by the trust. The statute provides:

> When a person summoned as a trustee has in his possession goods, effects or credits of the defendant, which he holds by a conveyance or title void as to the creditors of the defendant, he may be adjudged a trustee on account thereof, although the defendant could not have maintained an action therefor against him; and, in its discretion, the court may order a person so summoned to appear personally before the court and submit to an oral examination.

12 V.S.A. § 3143. Plaintiff alleged that defendant Heaton had transferred most of his assets to the trust without consideration. Specifically, it alleged that in a financial statement submitted to plaintiff after the transfer, defendant stated he was worth only $817,548, whereas before the transfer his net worth exceeded $11,000,000. In a deposition prior to the judgment, defendant described himself as "unemployed." A later financial statement indicated a negative net worth.

Defendants' counsel, who had filed the disclosure for the trustees, appeared at the hearing on April 2. It is unclear whether she appeared for defendants, the trustees or both. In any event, she filed a memorandum stating that the spendthrift trust was valid and insulated the assets from the claims of creditors, including plaintiff. She sought discharge of the trustees from the trustee process.

At a very brief hearing, the court decided that the issue was one of law only and took no evidence. Although neither party disputed this assessment, counsel opposing plaintiff stated that she wanted "to make it clear we are not in entire agreement on the statement of facts as set forth" in plaintiff's memorandum. On June 15, 1992, the court issued a decision and order finding that the assets of the trust had been conveyed by defendant Heaton to the trust in fraud of plaintiff as a preexisting credi-

tor. It held that the trust was "void" as to plaintiff and ordered the trustees to pay the outstanding judgment amount. In reaching this conclusion, the court relied on the facts alleged in plaintiff's memorandum.

Before the trial court, as well as initially in this Court, the parties have been like the proverbial ships passing in the night. Plaintiff argues that this case is about a fraudulent conveyance and that the form in which the assets ended up in the trustees' hands is irrelevant. The trustees assert that this case is about the validity of spendthrift trusts and the extent to which the trust assets can be reached to satisfy the claims of creditors against trust beneficiaries.

The confusion is caused in large part by the way in which the issues arose. Ordinarily, trustee process is a method for a creditor to get at property of or obligations due to its debtor, *First Wisconsin Mortgage Trust v. Wyman's, Inc.*, 139 Vt. 350, 353, 428 A.2d 1119, 1121 (1981), and the creditor stands in the shoes of its debtor. See *Island Pond Nat'l Bank v. Chase*, 101 Vt. 60, 61, 141 A. 474, 474 (1928). Without prior notice, however, plaintiff relied on a different and unique use of trustee process, and essentially brought an action against the trustees in order to set aside a fraudulent conveyance. This is a special use authorized by 12 V.S.A. § 3143, where the debtor has no right to the assets held by the trustee.

Because plaintiff provided no notice that trustee process was issued pursuant to § 3143, the trustees disclosed none of the relevant facts to the court and gave it no factual basis on which to rule. See 12 V.S.A. § 3065 (disclosure of trustee may set forth "such facts as he deems material" and may be supplemented by interrogatories); *First Wisconsin Mortgage Trust*, 139 Vt. at 356, 428 A.2d at 1123 (trustee has duty to "adequately present the exact nature of any obligations claimed to be trusteed"). Although the parties agreed that the issue was one of law, each party was actually arguing that the facts asserted by the other were irrelevant under the proper theory of the case.

Conclusions of law must be supported by findings of fact, as well as an explanation as to how the court reached its conclusions. See *Nickerson v. Nickerson*, 158 Vt. 85, 88–89, 605 A.2d 1331, 1333 (1992). In turn, findings must be supported by

some credible evidence. See *Blodgett Supply Co. v. P.F. Jurgs & Co.*, 159 Vt. 222, 228, 617 A.2d 123, 126 (1992). Here, there is no evidence to support the findings, and we cannot uphold them. In the absence of valid findings, the conclusions must be reversed.

■ Plaintiff presents two ways to avoid this result. First, it asserts that the parties stipulated to the facts in plaintiff's memorandum and that those facts support the decision. We cannot accept plaintiff's view of what occurred. A stipulation is an agreement that involves a meeting of the minds. See *Public Service Co. v. Town of Seabrook*, 580 A.2d 702, 704 (N.H. 1990) (stipulation is contractual in nature, governed by contract rules); *Schere v. Township of Freehold*, 375 A.2d 1218, 1219 (N.J. Super. Ct. App. Div. 1977) (terms of stipulation must be definite and certain and must be assented to by parties or their representatives). There does not appear to have been a meeting of the minds in this case; there is no written stipulation, and the record indicates disagreement regarding at least some of the facts in plaintiff's memorandum.

Even if we were to find that the parties stipulated to plaintiff's statement of facts, these facts do not establish a fraudulent conveyance, as to plaintiff, of defendant's assets to the trust. The elements of a fraudulent conveyance are set forth in *Becker v. Becker*, 138 Vt. 372, 375, 416 A.2d 156, 159 (1980):

> The plaintiff must establish (1) that there existed a right, debt or duty owed [plaintiff] by the defendant, which debt, in this case, arose before or near the time of the defendant's conveyance; (2) that the defendant conveyed property which was subject to execution in satisfaction of the defendant's debt; (3) that the conveyance here was without adequate consideration, and (4) if the conveyance was without adequate consideration, as here alleged, that the defendant acted fraudulently to the hindrance of the plaintiff's rights against him.

Plaintiff's memorandum alleges facts sufficient to satisfy the first three elements.

■ The fourth element is more problematic. It requires plaintiff to demonstrate defendant's fraudulent intent. This intent is presumed upon a showing that the conveyance was with-

out consideration and "that the condition of the debtor's estate is such that [the creditor] cannot collect on his debt." *Id.* at 378, 416 A.2d at 161. The party maintaining the validity of the transfer may rebut this presumption of fraud, however, by putting forth evidence indicating that at the time of the transfer the debtor had sufficient assets to satisfy his debts. *Id.* at 378–79, 416 A.2d at 161.

Plaintiff's memorandum alleges that defendant Heaton claimed a net worth of over $800,000 following the transfer of the assets to the trust, and that eleven months later defendant said his net worth was negative. There are no facts connecting this decline to the earlier transfer of assets to the trust. Even if the trustees had stipulated to the facts in plaintiff's memorandum, those facts were insufficient for the court to find that defendant acted fraudulently as to plaintiff.

■ Plaintiff's second argument is that the trustees cannot contest the court's action on appeal because they failed to object below. The issue of whether the trust should be adjudicated a trustee and subjected to the judgment against defendants was contested below, and the court's inappropriate use of the facts alleged in plaintiff's memorandum occurred after the case was under submission. Under V.R.C.P. 52, it is not necessary to object to findings or move to amend the findings to subsequently attack the sufficiency of the evidence to support the findings. See Reporter's Notes, V.R.C.P. 52. The trustees are not precluded from contesting the judgment against the trust.

*Reversed and remanded.*