People's United Bank v. Burgess Bros. et. al, No. 128-4-12 Bncv (Wesley, J., Nov. 14, 2013).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| **SUPERIOR COURT**<br>**Bennington Unit** | **CIVIL DIVISION**<br>**Docket No. 128-4-12 Bncv** |

| | |
|---|---|
| **People's United Bank, successor in interest by merger to Chittenden Trust Company d/b/a Chittenden Bank,**<br>**Plaintiff.**<br><br>**v.**<br><br>**Burgess Brothers, Inc.; Clyde G. Burgess, Jr.; and, Burgess Brothers Land Company, LLC.,**<br>**Defendants.**<br><br>**Bank of Bennington,**<br>**Trustee.** | |

### Decision and Order
### Granting Plaintiff's Motion to Determine Liability of a Trustee

**Background**

Plaintiff sued Defendants to recover funds it paid out on credit. According to the complaint, Plaintiff gave Burgess Brothers, Inc. an irrevocable line of credit of $250,000. Mr. Burgess[1] personally guaranteed the line of credit. Plaintiff sent a letter to Vermont Agency of Natural Resources informing the agency of the line of credit. On January 9, 2012, the Agency of Natural Resources drew on the line of credit. Plaintiff then sought to recover the funds it paid to the Agency of Natural Resources from Defendants.

In an effort to preserve assets to be applied against an eventual judgment on its complaint, Plaintiff invoked trustee process. It served Bank of Bennington with a summons to trustee on April 17, 2012. On April 23, 2012, Bank of Bennington disclosed five accounts associated with Mr. Burgess, with a total value of $112,118.57. Thereafter, the Court issued a judgment against Defendants on October 22, 2012. On December 5, 2012, after Plaintiff served it with a Writ of Execution, Bank of Bennington issued a check to Plaintiff for $77,520.37. Bank of Bennington did not turn over, or account for, the remaining $34,598.02 of the $112,118.57 initially described by its trustee's disclosure. It is now undisputed that Bank of Bennington did not freeze these assets. Rather, it allowed account holders, principally Clyde Burgess or those acting under his authority, to withdraw the funds. Plaintiff now seeks $34,598.02, together with interest.

---

[1] Mr. Burgess is now deceased, but his estate continues to represent his interests.

Bank of Bennington argues that it is not liable for the $34,598.02. After the Court ordered Bank of Bennington to respond to Plaintiff's motion to determine trustee's liability, Bank of Bennington argued it was uncertain of ownership of the $34,598.02. Bank of Bennington also argued that Plaintiff failed to follow the correct procedures to determine ownership, while providing no description of the asserted procedural omission, or any authority for the claim that the Plaintiff was remiss in failing to follow such a procedure. Bank of Bennington further maintains that Plaintiff is estopped from seeking to adjudicate trustee liability because it accepted funds from one of the accounts. Bank of Bennington also believes interest is inappropriate with these uncertainties.

On November 12, 2013, the Court held a hearing on Plaintiff's motion. Elizabeth Glynn, Esq. represented Plaintiff. Daniel Young, Esq. represented Bank of Bennington. Peter Lawrence, Esq. appeared on behalf of the Estate of Clyde Burgess. At the hearing, the parties confirmed that all persons that might have a claim to the money in the five accounts which were subject to the trustee disclosure made by Bank of Bennington received notice, and none have filed claims with the Court or otherwise sought party status. At the hearing, the attorneys made oral arguments. No one made a proffer of disputed facts, or a request to present evidence to determine any such material fact in dispute.

**Discussion**

The central issue presented by Plaintiff's motion concerns the liability of a trustee that discloses assets , but fails to freeze the assets and allows them to be withdrawn. The statutes establishing the procedures for trustee process impose significant responsibilities on a trustee. First, a trustee must disclose assets it holds after a proper request. 12 V.S.A. § 3062. If a trustee fails to follow the statutory procedures, the trustee can be personally liable for the claimed damages. 12 V.S.A. § 3063.

The Vermont Supreme Court discussed a similar set of issues in *First Wisconsin Mortgage Trust v. Wyman's, Inc. See* 139 Vt. 350 (1981). In *First Wisconsin*, a party obtained a judgment and then served trustee process on a Bank. *Id.* at 352. A dispute occurred about the obligations of the Bank and the Vermont Supreme Court described a trustee's obligations. *See id.* at 353–54. The Court noted trustees who have been served have a heavy responsibility. *Id.* at 355. Failure to follow the rules leads to liability of the trustee. *See id.* Most important to this case, the Supreme Court held that once a trustee is served "such service freezes the funds and forbids any change in ownership pending determination of the responsibility of the trustee." *Id.* A trustee bank also has the obligation to determine the ownership of property it discloses. *Id.*

Considering the holding in *First Wisconsin,* Bank of Bennington failed its responsibilities as a trustee. Once Bank of Bennington was served with a notice of trustee process, it should have frozen all the assets. *See id.* Instead, Bank of Bennington noted there might be disputes over $34,598.02 and did not freeze that amount. Rather, Bank of Bennington continued to allow Mr. Burgess, the party against whom Plaintiff received a trustee process, to withdraw funds from the accounts, either personally or through his agents. Under these circumstances, the law plainly imposes liability on Bank of Bennington for the $34,598.02 it neglected to sequester. *See* 12 V.S.A. § 3063; *First Wisconsin*, 139 Vt. at 355.

Bank of Bennington cannot prevail by its attempt to shift the blame to Plaintiff for failing to initiate proceedings to determine the correct ownership of the accounts. *First Wisconsin* makes clear that Bank of Bennington, rather than Plaintiff, had the responsibility to determine ownership. *See* 139 Vt. at 355. Moreover, while any dispute of ownership might have been cause for a court hearing as to the rightful claimant, Bank of Bennington's uncertainties in that regard did not relieve it of its obligation to freeze the assets pending such determination. *See id.* As Plaintiff notes, Bank of Bennington could have sought a court determination itself by means of an interpleader action under V.R.C.P. 22.

Neither equitable estoppel or waiver prevents Plaintiff from recovering from the Bank of Bennington. Without citing any law, Bank of Bennington argues Plaintiff should not be able to recover because Plaintiff accepted $1,000 from one of the disclosed accounts in exchange for releasing a security interest. Bank of Bennington makes no evidentiary proffer that Plaintiff had knowledge of the source of the funds at the time. "The doctrine of [equitable] estoppel is based upon the grounds of public policy, fair dealing, good faith, and justice, and its purpose is to forbid one to speak against his own act, representations or commitments to the injury of one to whom they were directed and who reasonably relied thereon." *Fisher v. Poole*, 142 Vt. 162, 168 (1982). Bank of Bennington has failed to plead or establish the elements of equitable estoppel. *See id.*

Similarly, the Court is not persuaded by Bank of Bennington's arguments asserting waiver or ratification. "A waiver is a voluntary relinquishment of a known right…." *Anderson v. Coop. Ins. Cos.*, 2006 VT 1, ¶ 10, 179 Vt. 288. There is no proffer of evidence to support the claim that Plaintiff made a voluntary relinquishment, or that it somehow ratified the acts of an agent after reliance by the trustee, *See, e.g., Nason v. Addison Cnty. Trust Co.*, 104 Vt. 183 (1932).

Finally, Bank of Bennington argues again that its uncertainty as to the ownership of the accounts ought to negate any claim of interest by Plaintiff. Yet, as discussed above, Bank of Bennington fails to address its responsibility to freeze the assets and determine ownership. *See First Wisconsin*, 139 Vt. at 355. It is further telling that potential parties involved have not asserted any rights to assets in the accounts once they received notice. Instead of protecting the potential rights of other interest holders, to say nothing of Plaintiff's claim based on its eventual judgment, Bank of Bennington allowed Mr. Burgess to withdraw funds after receiving a trustee process notice. Plaintiff is entitled to interest on the $34,598.20 as of December 5, 2012. At the statutory rate of twelve percent per year in simple interest, the per diem interest is $11.37. *See* 9 V.S.A. § 41a(a).

### Order

The Court **GRANTS** Plaintiff's motion to determine the liability of a trustee . As a trustee, the Bank of Bennington owes Plaintiff $34,598.20, together with $11.37 per diem from December 5, 2012.

Dated at Bennington, Vermont on November 14, 2013.

_____
John P. Wesley
Superior Court Judge