STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss.                                         CIVIL ACTION
                                                        Docket No. CV-04-390



R.C. MOORE, INC.,

        Plaintiff,

v.                                              ORDER

LES-CARE KITCHENS, INC.,

        Defendant,

WACHOVIA BANK, N.A., et al.,

        Trustees.


On February 27 through March 1, 2006 the court held a hearing on plaintiff R.C.

Moore's claim against Wachovia Bank based on trustee process served on an agent of

Wachovia Bank on July 19, 2004. R.C. Moore's claim against defendant Les-Care

Kitchens has been stayed due to Les-Care's involuntary bankruptcy, and it is not

anticipated that Les-Care will emerge from Chapter 7. By agreement of the parties,

Wachovia Bank's motion for relief from the default entered against it for failure to

answer the trustee summons was also the subject of evidence at the hearing. See Order

filed December 14, 2005 at 2 n.1.

        As outlined below, it is not disputed that Wachovia Bank failed to file a timely

answer to the trustee summons served on July 19, 2004. Under 14 M.R.S. § 2614, when

an entity summonsed as trustee fails to appear and answer, the trustee must be

defaulted and adjudged trustee

                to the extent that such a person holds goods, effects or
                credits of the principal defendant otherwise available to
                satisfy the unsatisfied portion of final judgment.

The effect of this provision is that, even if a trustee defaults, it can only be held liable to the extent that it holds assets of the defendant that are "otherwise available" to satisfy any judgment. Nevertheless, whether Wachovia Bank should be granted relief from its default in this case is contested because Wachovia Bank claims a security interest in the moneys it had on deposit for Les-Care Kitchens at the time the trustee summons was served. R.C. Moore contends that, by virtue of Wachovia Bank's default, the Bank should be precluded from asserting its security interest as a defense to its liability as trustee.

Based on the evidence presented at the hearing, the court finds as follows by a preponderance of the evidence:

1. On July 15, 2004 the court issued an order approving attachment and attachment on trustee process in favor of R.C. Moore against Les-Care Kitchens, Inc. in the amount of $449,000.

2. Les-Care Kitchens owes at least $449,000 to R.C. Moore on R.C. Moore's claim for breach of contract.

3. On July 19, 2004 Kennebec Deputy Sheriff Harry McKenney served a trustee summons in the amount of $449,000 on Corporation Services Co. (CSC), an authorized agent for Wachovia Bank.[1] This service was most likely accomplished between 11 a.m. and 2 p.m. on July 19.

4. As the same time that he served the trustee summons addressed to Wachovia Bank, Deputy McKenney also served trustee summonses addressed to four other Wachovia entities: Wachovia Capital Markets LLC, Wachovia Securities LLC, Wachovia Securities Financial Network, and Wachovia Securities, Inc.

---

[1] It has been stipulated that Wachovia Bank does business in Maine although it does not have an office here.

5.     On July 19, 2004 the five trustee summonses were shipped by CSC's office in Maine, which is located at the Preti Flaherty firm in Augusta, to another CSC office in Wilmington, Delaware. On July 20, 2004, the CSC office in Wilmington sent those summonses on to an intake paralegal for all the Wachovia entities in Charlotte, N.C. PX 24.

6.     Three of the summonses (the summonses addressed to Wachovia Securities LLC, Wachovia Capital Markets LLC, and Wachovia Securities Financial Network) were date stamped on July 21, 2004 by the intake paralegal in Charlotte (see PX 26-28), but only one of those – the summons to Wachovia Securities LLC – was logged into the intake paralegal's computer tracking system. See Exhibit A to PX 12. The Wachovia Securities LLC summons, the Wachovia Capital Markets LLC summons, and the Wachovia Securities Financial Network summons were all sent by the intake paralegal in Charlotte to the Wachovia Securities legal department in Richmond, Virginia.

7.     Neither the intake paralegal nor her counterpart in the Wachovia Securities legal department noticed that three entities (as opposed to only one) had been summonsed. In a letter dated July 29, 2004 that was received and filed by the clerk's office on August 5, 2004, the legal department of Wachovia Securities filed an answer on behalf of Wachovia Securities LLC to the trustee summons. That answer stated that Wachovia Securities LLC had no accounts in the name of Les-Care Kitchens, Inc. No answers were filed at that time on behalf of Wachovia Capital Markets LLC or Wachovia Securities Financial Network.

8.     With respect to the two remaining summonses – the summons addressed to Wachovia Securities Inc. and, most importantly, the summons addressed to Wachovia Bank – there is no evidence indicating whether those summonses were ever

3

logged in by the Wachovia intake paralegal. What happened after they were logged in by CSC in Wilmington on July 20, 2004 is not known. Given Wachovia's admitted failure to properly log the trustee summonses addressed to Wachovia Capital Markets LLC and Wachovia Securities Financial Network that were date stamped on July 21, 2004, the court concludes it is more likely than not that the trustee summons to Wachovia Bank was also sent by CSC to the Wachovia intake paralegal on July 20, 2004 but was not separately noted when it was received on July 21, and was thereafter mislaid.[2]

9. The trustee summons addressed to Wachovia Bank called for a response to be filed within 20 days of service, or by August 8, 2004. No answer was filed on behalf of Wachovia Bank by that date.

10. On August 16, 2004 R.C. Moore sought an entry of default against Wachovia Bank and that default was entered by the clerk on August 17, 2004. PX 29.

11. A copy of the entry of default was sent by the clerk's office to CSC and was apparently sent on to Wachovia on or about August 19, 2004. Id.

12. On August 18, 2004 R.C. Moore filed an application for a default judgment against Wachovia Bank adjudging Wachovia Bank as trustee in the amount of $449,000 or any lesser amount recovered by R.C. Moore against Les-Care Kitchens. That motion was served on CSC, as Wachovia's agent, by mail.

13. On September 15, 2004 Wachovia Bank, through Maine counsel, filed a motion to set aside the August 17, 2004 entry of default with an accompanying affidavit

---

[2] It is also possible although less likely that CSC logged in the trustee summons addressed to Wachovia Bank on July 20, 2004 but failed to transmit it to the intake paralegal in Charlotte. Since CSC was Wachovia Bank's registered agent and any negligence by CSC is chargeable to Wachovia Bank, this latter possibility would not alter the court's ruling.

4

of Joyce Camp (Wachovia's intake paralegal) and an answer to the trustee summons. The answer stated

> as of July 21, 2004, in response to plaintiff's summons to trustee, [Wachovia Bank] had in its hands or possession a credit of $6,717.39 in the name of Les-Care Kitchens, Inc.

PX 48. Wachovia Bank's motion to set aside the default and the answer it filed on September 15 did not raise any personal jurisdiction defense. In addition, neither Wachovia Bank's answer nor its motion to set aside the default raised any argument that Wachovia Bank possessed a security interest in any funds in the Les-Care bank accounts.

14. Recognizing that a motion to set aside a default generally requires a sufficient excuse for the default and the existence of a meritorious defense, Wachovia Bank argued that its possession of only $6,717.39 constituted a meritorious defense. PX 13.

15. At the time that R.C. Moore sought the entry of a default judgment against Wachovia Bank and at the time that Wachovia Bank moved to set aside the default, it appears that both parties may have been unaware of the 2003 amendment to 14 M.R.S. § 2614 which provided that a defaulting trustee should only be adjudged trustee "to the extent that such a person holds goods, effects, or credits of the principal defendant."[3] On November 10, 2004 the court, noting the 2003 amendment, issued an order questioning whether any ruling was necessary on the on the motion to set aside the default. PX 50. The parties responded with a joint request that a ruling be deferred until after further discovery. PX 51.

---

[3] The trustee summons served on Wachovia Bank was an older form which predated the 2003 amendment to § 2614 and provided that if no response was filed the Bank could be adjudged trustee in the full amount of the attachment even if it did not have property of the defendant.

5

16. At this time, Les-Care Kitchens was still actively defending the action, and there were a number of discovery disputes between R.C. Moore and Les-Care. While these disputes were pending, R.C. Moore, noting that Wachovia Bank's September 15 answer to the trustee summons listed credits as of July 21 even though the summons had been served on July 19, sought discovery as to the balances of any Les-Care accounts on July 19 and 20 as well as July 21. The court granted such discovery by order filed December 20, 2004. That order directed Wachovia Bank to disclose (1) the balances in Les-Care's accounts on July 19 and 20, (2) any transactions in such accounts that occurred on July 19 or 20, and (3) the time of those transactions. PX 54.

17. The Bank's initial response to this order was not complete. Its response consisted of redacted documents which showed transactions in and out of the accounts on July 19 and 20 but recorded only the balances for the close of business on July 19, 20, and 21. In account 2030000970645 the closing balances shown were as follows:

| July 19 | $85,392.84 |
| July 20 | $40,205.78 |
| July 21 | $ 4,695.90 |

PX 55. Les-Care had two other accounts, Nos. 2030000970739 and 2030000970564 (Payroll), which showed unchanged closing balances of $1,921.49 and $5,212.44 respectively for July 19, July 20, and July 21. Id.

18. At the request of counsel for R.C. Moore, the court thereafter ordered further disclosure by the Bank, including balance information for July 18 and a directive that the Bank provide an affidavit explaining what information the Bank had as to the timing of transactions in and out of Les-Care accounts. PX 59. The information and affidavit were provided on February 10 and 18, 2005. PX 60, 19.

19. The unredacted Bank account statements, the Bank's affidavit, and the other evidence presented at trial demonstrate that the opening balance on July 19, 2004

6

for Les-Care Kitchen account #2030000970645 was $684,842.43. DX 1; PX 19. For that day three deposits totaling $72,194.41 were credited to that account, and four withdrawals totaling $512,130.51 (including one $492,000 withdrawal that was removed from the account by the Bank pursuant to a "sweep" procedure described below) were removed from the account. The closing balance shown for that account on July 19, 2004 was $85,392.94. DX 1.

20.    Under the system used by Wachovia, transactions occurring in the account on July 19 were not posted on an ongoing basis throughout the day but were held and posted as a group after business hours. PX 19. Wachovia's best information is that all of the July 19 transactions – both deposits and withdrawals – actually were posted during the early morning hours of July 20, sometime between 2:26 a.m. and 2:51 a.m. PX 19.

21.    Accordingly, as of the time when service of the trustee summons addressed to Wachovia Bank was made on CSC in Augusta on July 19, 2004, the balance in Les-Care account No. 2030000970645 was $684,842.43.

22.    At the time in question, Les-Care Kitchens had an outstanding term loan from Wachovia Bank in the amount of approximately $5.6 million and had also drawn approximately $2.9 million on a $3 million line of credit.[4] DX 5-6. Wachovia Bank had also lent approximately $1.9 million to Lou-Jay Associates, and that loan had been guaranteed by Les-Care Kitchens. DX 7; DX 12.

---

[4] R.C. Moore points out that Wachovia Bank is unable to produce the original of the promissory note underlying the $3 million line of credit. Wachovia Bank has a copy of that note, however, and adequately demonstrated (1) that the Bank was in possession of the note and was entitled to enforce it when the note was mislaid, (2) that its loss of possession was not the result of a transfer or unlawful seizure, and (3) that the Bank cannot now locate the original note because its whereabouts cannot be determined. The parties appear to agree that Connecticut law would govern the note, but the applicable provisions of Connecticut law are the same as Maine law on this issue. See Conn. Gen. Stat. Ann. § 42a-3-309; 11 M.R.S. § 3-1309(1).

23. To secure these loans the Bank had a security agreement that covered, *inter alia*, "all funds on deposit with the Bank." DX 15.

24. As of July 19, 2004, there were grounds on which the Bank could validly have asserted that Les-Care Kitchens was in default. The Bank did not declare any default at that time, nor did it take any collection action at that time.

25. During July 2004 there was an arrangement in place whereby amounts were added on an intermittent basis to Les-Care's checking account No. 2030000970645 from Les-Care's $3 million line of credit (to the extent that the $3 million maximum had not been drawn down) and amounts were also withdrawn on an intermittent basis from account No. 2030000970645 to reduce the outstanding amount on the line of credit. These additions and withdrawals were designated on the account statement (DX 1) with the notations "sweep + loan advance" and "sweep + loan payment" respectively. Although the Bank has standard form authorizations governing such "sweeps," see DX 28-29, it was unable to produce any signed authorization for the sweeps that occurred in the Les-Care account. It is likely however, that the sweeps in question occurred with the knowledge of Les-Care and without objection by Les-Care.

26. One such "sweep" – the withdrawal of $492,000 from account 2030000970645 mentioned in paragraph 19 above – was used to reduce the outstanding balance of Les-Care's $3 million line of credit from $2.927 million to $2.435 million and is shown on the Bank's records as having taken place on July 19, 2005. DX 1. As noted above in paragraph 20, however, the actual withdrawal of that amount was posted during the early morning hours of July 20.

27. The withdrawal in question was part of a process by which excess assets in Les-Care's checking account were used to reduce the outstanding amount on the line of credit on an ongoing basis. The withdrawal was not undertaken by Les-Care to

repay the Bank's loan and did not result from any collection action by the Bank. Indeed, after the $492,000 withdrawal on July 19, which reduced the amount of the line of credit to $2.435 million as of that date, subsequent advances from the line of credit into the checking account were made on July 20, July 21, July 22, and July 28. As of July 28, the $3 million line of credit was once again fully extended. DX 1, 5.

28.     During the time period after service of the trustee summons on July 19, 2004, in addition to the withdrawals and deposits between account 2030000970645 and Les-Care's $3 million line of credit, the Bank also permitted Les-Care to withdraw more than $449,000 to make payments in the ordinary course of business to persons (vendors and others) who had no security interests and were at best unsecured creditors.

29.     Under the circumstances of this case, Wachovia Bank had a reasonable opportunity to act on the attachment within 12 hours of the time it was served on CSC.


1.     Wachovia Bank's Motion to Set Aside Default

A party seeking to set aside the entry of a default must make a showing of good cause. M.R.Civ.P. 55(c). A showing of good cause requires both (1) a reasonable excuse for the untimeliness and (2) a meritorious defense. Levine v. Key Bank N.A., 2004 ME 131 ¶ 13, 861 A.2d 678, 683.

On the issue of whether Wachovia Bank has offered a reasonable excuse for its untimeliness, merely having a system in place to respond to legal process does not amount to good cause. Id. 2004 ME 131 ¶ 21, 861 A.2d at 684. In some respects Wachovia's case presents a more sympathetic picture than was presented in the Levine case because Wachovia Bank has no office in Maine and therefore any trustee summons served upon an authorized agent had to be transmitted to Wachovia's offices out of

9

state. This inevitably introduced a greater likelihood that the summons would be mislaid.[5]

In the final analysis, however, just as in Levine, Wachovia Bank has failed to sufficiently explain why the summons to Wachovia Bank went astray and has failed to demonstrate a reasonable excuse for the default. This court strongly disfavors defaults, but notes that there are two additional factors here that weigh against Wachovia Bank. First, Wachovia Bank had the means to ascertain whether it had responded because CSC had logged in the entities which had been served (see PX 24). No effort was apparently ever made to match up the Wachovia entities served via CSC with the Wachovia entities that responded.

Second, when Wachovia Bank did respond, it did so in a fashion that the court agrees was incorrect at best and misleading at worst. Wachovia Bank argued at trial that dating its response as of July 21 was appropriate because 48 hours was necessary to allow the Bank a reasonable opportunity to act on the summons. See Wachovia Bank Post Trial Brief at 9, citing 14 M.R.S. § 2603. In the court's view, Wachovia's answer should have expressly disclosed that it was basing its response on its contention that 48 hours was necessary for it to act on the trustee summons and that there were different opening and closing balances in the account on July 19 and 20. This is particularly true because the relevant balances fluctuated so significantly between July 18 and 21.[6]

Wachovia Bank's motion to set aside the entry of default is denied.

---

[5] In Levine Key Bank chose to send the trustee summons to its office in Cleveland, but no showing was made as to why this was necessary or why the Auburn branch could not have responded. See id.

[6] Whether Wachovia raised a meritorious defense should be judged as of the date of the answer rather than in light of the subsequent developments in the case. However, it bears emphasis that not only did Wachovia's answer not disclose that there were significantly higher balances on the days preceding July 21, it also (1) made no disclosure of the amounts in Les-Care's payroll account; (2) gave an incorrect total for the July 21 closing balances in accounts # 2030000970645 and 2030000970739, and (3) failed to mention the security interest on which Wachovia now relies.

10

## 2. Waiver

Wachovia Bank argues that even if its default is not set aside, it is entitled to raise its security interest as a defense to R.C. Moore's claim because even when a trustee defaults, the trustee is only liable to the extent that it holds property of a defendant that is "otherwise available" to satisfy a judgment. 14 M.R.S. § 2614. Wachovia Bank argues that funds subject to a security interest are not "otherwise available." R.C. Moore in turn argues that Wachovia Bank waived this defense because it failed to raise it either in the answer it filed or in its motion to set aside the default.

The court cannot find any authority that resolves the question of whether, given the 2003 amendment to 14 M.R.S. § 2614, a party asserting a security interest is obligated to raise that interest in an answer to a trustee summons. Indeed, there is a paucity of authority on the issue of whether a trustee would have been required to raise the existence of a security interest in its answer to a trustee summons even before the 2003 amendment to 14 M.R.S. § 2614.

As a matter of logic, however, since this is an issue on which the Bank should bear the burden of proof, the court believes that the existence of a security interest is in the nature of an affirmative defense that is waived unless timely asserted. Moreover, unless a trustee is required to assert the existence of a security interest in its answer, it could respond that it had no assets that were "otherwise available" and never put the plaintiff on notice of the existence of assets and of the need to investigate the validity of the trustee's claimed security interest. Here, the Bank did not raise its claim that a security interest existed for some time after it initially filed its late answer to the trustee

11

summons.[7] Moreover, the Bank's claim that it had a security interest in all of Les-Care's deposits is inconsistent with the answer that was filed on behalf of the Bank and with the Bank's motion to set aside the default, both of which represented that $6,617.39 had been trusteed.

The court concludes that Wachovia Bank waived its defense that a security interest existed by not raising that issue in its answer.[8]

3.    Wachovia Bank's Security Interest

In the alternative, even if the entry of default against Wachovia Bank or its failure to assert a security interest in its answer does not dispose of the Bank's claim that it had a security interest in Les Care's deposits, the court concludes that the Bank's security interest would not prevail over R.C. Moore's claim. This is because the Bank permitted Les-Care's deposits to be withdrawn to make at least $449,000 in payments in the ordinary course of business to vendors and other persons. By allowing those payments to be made out of the account, the Bank released any security interest it had in the monies in question. See C.G.S.A. § 42a-9-332(b); 11 M.R.S.A. § 9-1332(b).

Thus, assuming that the Bank's security interest would have had priority over R.C. Moore's attachment if the Bank had asserted its security interest in Les-Care's deposits and frozen them as soon as the attachment was received, the Bank lost that priority when it released the monies in question. At that point R.C. Moore's attachment

---

[7] The record does not reflect exactly when counsel for Wachovia first disclosed that Wachovia was asserting a security interest. The claim that a security interest existed had been raised at the time of the court's June 9, 2005 order directing Wachovia Trustees to file an offer of proof on certain issues, including the alleged "existence and priority of any security interest claimed by the Wachovia Trustees ... "

[8] However, the court does not conclude that the concepts of estoppel or judicial estoppel are applicable here because R.C. Moore did not change its position in reliance on the Bank's answer and the Bank is not taking any position contrary to one on which it prevailed in an earlier judicial proceeding.

12

had priority, and R.C. Moore was therefore entitled to the funds in Les-Care's accounts at the time the attachment took effect.

4.      When the Attachment Took Effect

As noted above, Wachovia Bank's agent in Maine was served between 11 a.m. and 2 p.m. on July 19, 2004. At that time and for the next 12-15 hours – until at least 2:26 a.m. on July 20, 2004 – the balance in Les-Care account #2030000970645 was $684,842.43. The remaining question is whether the attachment took effect when the summons was served by Deputy McKenney or at some later time – when the Bank would have had a reasonable time to process the attachment and freeze the funds.

Under 14 M.R.S.A. § 2603

> [s]ervice on the trustee binds all goods, effects or credits of the principal defendant entrusted to and deposited in the trustee's possession, to respond to final judgment in the action, as when attached by ordinary process if process describing the principal defendant with reasonable certainty is received at a time and in a manner that affords the trustee a reasonable opportunity to act on it. . . .

(emphasis added). The underlined language was added by amendment in 2003 and supersedes prior law suggesting that an attachment is effective at the time of service.[9] Instead, it makes an attachment effective as soon as the trustee has had a reasonable opportunity to act on the attachment.

What this means is that if service had been made by Deputy McKenney on CSC in Augusta, Maine at 11 a.m. on July 19, the presence of $684,842.43 in Les-Care's account at that time would not necessarily make the Bank liable as a trustee if all the monies in question had been withdrawn from a Wachovia branch in Connecticut thirty

---

[9] See R.C. Moore Post Trial Brief at 6, citing Davis v. U.S. Bobbin, 118 Me. 285 (1919).

minutes later. What the statute requires is a fact-specific inquiry in any given case as to when a bank or other trustee has had a reasonable opportunity to act on the attachment.

In the specific circumstances of this case, as set forth above in paragraph 29 of its findings, the court has found that Wachovia Bank had a reasonable opportunity to act on the attachment within 12 hours of the time CSC was served in Augusta. To be sure, Wachovia is an out of state bank and has no office in Maine. In this era of electronic communication, however, the CSC office in Augusta could have electronically transmitted the relevant information to the CSC office in Delaware by mid afternoon and CSC could have forwarded that information to Wachovia by the close of business on July 19. Because Wachovia Bank posts transactions to its accounts during the night, as shown by PX 19, the court concludes that Wachovia Bank could have reasonably processed the attachment before 2:26 a.m. on July 20. Wachovia has arranged its operations so that all the daily transactions in an account are not posted to that account until the evening hours. The existence of an attachment and the amount of that attachment could also be posted at that time.

While arguments can be made that a more generous period should be allowed,[10] allowing any period beyond the minimum necessary to give the trustee a reasonable opportunity to act on the attachment would be unwise as a matter of policy. If anything more than the minimum time were allowed, a trustee would have the ability to manipulate the transactions in an account so as to frustrate an attachment in cases wherethe trustee had claims of its own to the assets in question (as the Bank did in the instant case). Even where a trustee does not have its own claim to the assets, the trustee

---

[10] The 12-hour period that is reasonable in this case is based on the specific circumstances presented. If, for instance, service had been made on CSC in Augusta at the end of the business day, more than 12 hours might have been necessary to act on the attachment. In other cases (such as a trustee with only one office), a period of time shorter than 12 hours might be reasonable.

14

might, because of an ongoing business relationship, have reasons to be loyal to the party whose funds have been trusteed.

The court therefore concludes that the full amount of R.C. Moore's $449,000 attachment was effective before any withdrawals to account No. 2030009670645 were posted after 2 a.m. on July 20.

5. R.C. Moore's Claim for Additional Relief

R. C. Moore argues that, in addition to enforcement of its $449,000 attachment, it is entitled to recover its legal fees and costs from Wachovia Bank because of what it describes as repeated disregard by Wachovia of the court's orders. R.C. Moore argues that fees and costs should be assessed under 14 M.R.S. § 2614, which states in its last sentence that, as to a defaulting trustee,

> [n]othing in this section limits the additional remedies available under this chapter for the trustee's failure to disclose, including the assessment of costs under Section 2701 or, in a proper case, contempt.

While contempt is therefore an available remedy in a proper case, M.R.Civ.P. 66 sets out detailed procedures to be followed in cases where contempt is sought.[11] No motion for contempt was ever filed in this case, and the court does not believe it is free to impose contempt sanctions in the absence of a motion (even if contempt sanctions were otherwise warranted).

In addition, some of the instances complained of by R.C. Moore do not in fact involve disregard of the court's orders. Thus, although Wachovia Bank defaulted in responding to the trustee summons, as discussed above, a default does not constitute contempt of a court order, and the court is not aware of any authority to impose

---

[11] The other additional remedy expressly mentioned in § 2614 (costs under § 2701) is not applicable to this case.

15

attorney's fees as a sanction for failing to respond to a summons. Similarly, the Bank's failure to assert its security interest in the answer that was eventually filed may have constituted a waiver but it did not constitute disregard of a court order.[12]

There are, however, several issues on which the court is troubled. The first is Wachovia Bank's failure, in its initial answer, to explain the basis for its choice of July 21 as the date on which it disclosed balance information. While R.C. Moore did not rely upon the Bank's answer and was not misled, greater disclosure was warranted. A trustee's answer should be sufficient to put the plaintiff on notice of any funds that might be pursued even if the trustee has claims of its own or if the availability of those funds is disputed. However, Wachovia Bank's answer was not a violation of any court order and does not entitle R.C. Moore to the imposition of sanctions.

The court has a somewhat different view with respect to the Bank's response to the court's December 20, 2004 discovery order. Ordered to disclose the balance in Les-Care's accounts on July 19 and 20 and any transactions in those accounts, the Bank listed only the closing balances. Since the opening balance on July 19 was $684,842.43 and the closing balance was $85,392.84, this was a significant omission.

In fairness to the Bank, its response to the December 20 order did disclose a withdrawal of $492,000 (denoted "sweep + loan payment") on July 19, which put R.C. Moore on notice that there was further relevant information. Looking at both the

---

[12] In addition, although R.C. Moore complains that alleged inadequacies in the Bank's July 8, 2005 offer of proof justifies the imposition of attorneys fees, the court concludes that the Bank's offer was adequate to put R.C. Moore on notice of the issues the Bank would raise.

Bank's original answer and its response to the December 20 order, however, the court would describe the Bank's disclosures here as grudging at best.[13]

Regardless of whether any contempt motion was ever filed, the court has authority under Rule 37 to order payment of the reasonable expenses, including attorneys fees, incurred in obtaining discovery orders, and the court therefore awards R.C. Moore its expenses and legal fees incurred in obtaining the court's December 20, 2004 and February 8, 2005 discovery orders. Within 14 days from the date of this order is filed, counsel for R.C. Moore shall file an affidavit setting forth the time incurred, the rate at which attorneys fees are sought, the rate at which attorneys fees were actually billed to R.C. Moore, and any other expenses incurred. Wachovia Bank shall have 10 days to file any opposition.

One other issue can be addressed at that time. R.C. Moore seeks prejudgment interest on the attachment amount, but a party's entitlement to prejudgment interest in the context of an attachment is unclear. At the time of its attorney fees submission, R.C. Moore shall also brief the issue of prejudgment interest.

The entry shall be:

On R. C. Moore's claim against Wachovia Bank based on trustee process served on Wachovia Bank's Maine agent on July 19, 2004, judgment is entered declaring that Wachovia Bank is liable as trustee in the amount of $449,000. Counsel for R.C. Moore shall make an additional submission with respect to the expenses and attorneys fees awarded as a discovery sanction within 14 days.

The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

---

[13] In the alternative, it is possible that throughout this case, the Bank's responses have been characterized by the kind of leaden-footed and error-prone conduct that is sometimes exhibited by a large bureaucracy. Either way, the court would find a discovery sanction appropriate.

Dated: May __5__ , 2006

Thomas D. Warren
Justice, Superior Court

R.C. Moore-          Christopher Branson, Esq.

Les-Care, Inc.       Kate Debevoise, Esq.

Wachovia {Entities}- Andrew Sparks, Esq.