2004 ME 131

**Ira LEVINE**

v.

**KEYBANK NATIONAL ASSOCIATION.**

Supreme Judicial Court of Maine.

Argued: June 9, 2004.

Decided: Oct. 28, 2004.

Rebecca S. Webber (orally), John W. Conway, Linnell, Choate & Webber, L.L.P., Auburn, for plaintiff.

Bruce B. Hochman (orally), Teresa M. Cloutier, Lambert Coffin, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] KeyBank National Association appeals from a judgment entered in the Superior Court (Androscoggin County, *Delahanty, J.*) adjudging KeyBank trustee in the amount of $264,422.95. KeyBank challenges the court's denial of its motions made pursuant to M.R. Civ. P. 4B(j) and 55(c), and challenges the application and constitutionality of 14 M.R.S.A. § 2614 (2003).[1] Levine cross-appeals from the judgment, challenging the court's conclusion that Levine was only entitled to a portion of the amount due under a severance agreement he had with PhycoGen, Inc. We affirm the judgment.

## I. CASE HISTORY

[¶ 2] Ira Levine was the founder, president, and CEO of PhycoGen, Inc. In March of 2000, Levine and PhycoGen terminated their relationship and entered into a severance agreement that called for Levine to receive periodic payments over five years totaling $625,000. In October of 2001, Levine filed a complaint against PhycoGen for breach of the severance agreement because it had stopped making the periodic payments. At that time, he also filed an ex parte motion for attachment and trustee process pursuant to M.R. Civ. P. 4A(g) and 4B(i).[2] He alleged that PhycoGen owed him a total of $444,711.25 pursuant to the severance agreement. The court approved the attachment and trustee process in the amount of $450,000.

[¶ 3] Levine served KeyBank with a trustee summons in October 2001, notifying it "to file a written statement under oath **WITHIN 20 DAYS** [of service] indi-

---

1. The statute was amended in 2003 by P.L. 2003, ch. 149, § 7. *See* 14 M.R.S.A. § 2614 (Supp. 2003).

2. PhycoGen never answered the complaint, and the court entered a default judgment against it on January 14, 2002, resulting in PhycoGen's liability to Levine. PhycoGen filed for bankruptcy in June 2002, and is not a party to this appeal.

cating what property you have in your possession or control belonging to said Defendant(s), if any, to the value of ($450,-000)." The summons also contained the following warning notifying KeyBank that if it failed to file its disclosure statement, it could become liable for the full amount of the attachment:

### IMPORTANT WARNING

IF YOU FAIL TO FILE SUCH A STATEMENT (EVEN IF YOU INDICATE YOU HAVE NO SUCH PROPERTY) WITHIN THE TIME STATED ABOVE, YOU WILL BE DEFAULTED AND THE COURT WILL FIND THAT YOU HAVE SUCH PROPERTY IN THE STATED VALUE AND YOU MAY BECOME LIABLE TO PLAINTIFF IN THAT AMOUNT.

KeyBank did not file a disclosure statement or otherwise respond to the summons, and the clerk entered KeyBank's default on November 26, 2001. Notice of the default was mailed to KeyBank that same day.

[¶ 4] Levine subsequently moved for a default judgment against KeyBank. The court denied the request, without prejudice, in January 2002, reasoning that "[b]ecause the plaintiff must succeed on his claim against defendant PhycoGen before he has a right to claim attached property, the court cannot grant a judgment against [KeyBank] until the liability of PhycoGen has been established and ... a final judgment in a certain amount has been entered." The court did, however, order that KeyBank "is declared to be a trustee up to the sum of $450,000."

[¶ 5] Soon after the January order, KeyBank appeared in the action and filed, among other things, its trustee disclosure, a general denial to the complaint, a motion to intervene, a motion to set aside the entry of default pursuant to M.R. Civ. P.

55(c), an objection to the entry of a default judgment, and a motion pursuant to M.R. Civ. P. 4B(j) to dissolve or modify the underlying ex parte attachment order and to vacate or modify the January order adjudging KeyBank trustee. KeyBank's trustee disclosure reported that the bank held $7693.04 belonging to PhycoGen.

[¶ 6] The court denied KeyBank's motion to dissolve or modify the ex parte order of attachment and trustee process pursuant to M.R. Civ. P. 4B(j) by an order entered in February 2002. The court subsequently denied KeyBank's motion to set aside the entry of default pursuant to M.R. Civ. P. 55(c) by an order entered in June 2002. It did, however, grant KeyBank's motion to intervene "to the extent that it may participate and defend in any hearing to set damages for judgment."

[¶ 7] The court held an evidentiary hearing on damages and issued a written decision and judgment in October 2003. The court found that PhycoGen owed Levine a balance of $444,711.25 pursuant to the severance contract. The court also determined, however, that because the acceleration clause of the severance agreement had not been triggered, Levine was only entitled to $264,422.95 from KeyBank—the total of the outstanding payments due through October 31, 2003, the date of judgment. This appeal followed.

## II.  DISCUSSION

A.  KeyBank's Rule 4B(j) Motion to Dissolve or Modify the Trustee Process

■ [¶ 8] Rule 4B(j) provides that "any person having an interest in goods or credits that have been attached on trustee process pursuant to an ex parte order under [Rule 4B(h)] may appear ... and move the dissolution or modification of the trustee process." M.R. Civ. P. 4B(j). The

court denied KeyBank's motion pursuant to Rule 4B(j), finding that KeyBank, as a party in default, was precluded from seeking relief on the question of its liability as trustee while the default was in place. KeyBank contends that, despite its status as a defaulted trustee, it had standing to challenge the underlying attachment order pursuant to the plain language of Rule 4B(j). We disagree.

[¶ 9] The court's authority to enter a default against KeyBank is grounded in 14 M.R.S.A § 2614, which then provided that "[w]hen a person summoned as trustee neglects to appear and answer to the action, he shall be defaulted and adjudged trustee as alleged." *See Butler v. D/Wave Seafood,* 2002 ME 41, ¶ 16, 791 A.2d 928, 932 (citing *Coombs v. Gov't Employees Ins. Co.,* 534 A.2d 676, 678 (Me.1987)). KeyBank, as a party against whom a default had been entered, was required to have the default set aside pursuant to M.R. Civ. P. 55(c) before it could utilize M.R. Civ. P. 4B(j) to obtain relief from an ex parte trustee process. *Cf. Oliver v. Martin,* 460 A.2d 594, 595 (Me.1983). Rule 4B(j) is designed to afford a trustee an immediate opportunity to be heard following its receipt of an ex parte trustee summons, and it is not an alternative avenue for challenging a default.

[¶ 10] Here, KeyBank sought relief pursuant to Rule 4B(j) more than three months after the court's ex parte approval of the trustee process, and after the clerk's entry of a default based on the bank's failure to answer the summons or otherwise appear. If we were to adopt KeyBank's view and hold that a defaulted party can attack an underlying attachment order without first demonstrating good cause for its default as required by Rule 55(c), the good cause requirement would be rendered ineffective. We conclude instead that a trustee in default must first obtain relief pursuant to Rule 55(c) before it can avail itself of the benefits of Rule 4B(j).[3]

[¶ 11] The court also concluded that even if it were to entertain KeyBank's motion, the motion would have to be denied because KeyBank had failed to challenge by affidavit any of the findings in the ex parte order, as required by the rule. *See* M.R. Civ. P. 4B(j). Levine points out, for example, that KeyBank failed to assert by affidavit that no mediation had occurred prior to litigation, as required by the agreement between Levine and PhycoGen. The court stated that "[t]he only affidavit filed in support of the motion is from a [KeyBank] employee stating that PhycoGen has an account with [KeyBank]." KeyBank contends that Rule 4B(j) did not require it to challenge by affidavit Levine's failure to submit to mediation because the severance agreement contains a mediation provision. This argument is unpersuasive, however, because the mediation agreement was between PhycoGen and Levine, and PhycoGen's default in response to Levine's complaint resulted in the waiver of the mediation requirement. *See* M.R. Civ. P. 55(b).

[¶ 12] Accordingly, the court did not err in determining that KeyBank, as a party against whom a default had been entered, did not have the right to be heard pursuant to M.R. Civ. P. 4B(j) while its default remained in place.

---

3. The record reflects that KeyBank filed its Rule 4B(j) motion subsequent to filing its motion to set aside the default. The bank requested the clerk to schedule a hearing on the 4B(j) motion within forty-eight hours of filing, as provided by the rule. Accordingly, the trial court heard and ruled on the 4B(j) motion before a hearing was scheduled on the bank's motion to set aside the default.

**B. KeyBank's Rule 55(c) Motion to Set Aside Entry of Default**

[¶ 13] Separate from its Rule 4B(j) motion, KeyBank moved to set aside the court's entry of default under Rule 55(c) which provides, "[f]or good cause shown the court may set aside an entry of default." M.R. Civ. P. 55(c). In order to "establish 'good cause,' a party must show a good excuse for his or her untimeliness and a meritorious defense." *Truman v. Browne*, 2001 ME 182, ¶ 9, 788 A.2d 168, 170. "We review a trial court's ruling on a motion to set aside a default for abuse of discretion and will vacate the judgment only 'if the denial works a plain and unmistakable injustice against the defendant.'" *Id.* (quoting *LaFosse v. Champagne*, 2000 ME 81, ¶ 10, 750 A.2d 1254, 1256). "We give 'considerable deference to the presiding justice's decision on such a motion because of his familiarity with the case and his superior position to evaluate the credibility and good faith of the parties who appeared before him.'" *Hamby v. Thomas Realty Assocs.*, 617 A.2d 562, 563 (Me. 1992) (quoting *Porges v. Reid*, 423 A.2d 542, 544 (Me.1980)).

[¶ 14] KeyBank contends that the court committed an unsustainable exercise of discretion in denying the bank's motion because the court "appears to have based its ruling on the mere fact that KeyBank had recently been involved in another matter involving default as a trustee, . . . culminating in the decision of *Butler v. D/Wave Seafood*, 2002 ME 41, 791 A.2d 928." KeyBank asserts that this demonstrates that the court failed to undertake "the case-by-case, fact-based analysis required when making a good cause determination." We disagree.

[¶ 15] Although the court did state that *Butler* "is a case remarkably similar to the present case," there is no indication in the transcript of the hearing on KeyBank's motion that the court simply adopted *Butler's* reasoning without considering the facts associated with the case before it. Indeed, the transcript reflects the opposite view. The court specifically distinguished KeyBank's explanation of its processing of the trustee summons in *Butler* from the bank's explanation of the processing of the trustee summons in this case.[4]

[¶ 16] KeyBank also argues that in considering its motion, the court erred by applying M.R. Civ. P. 60(b)'s standard of excusable neglect, rather than Rule 55(c)'s standard of good cause,[5] and that it had established good cause to set aside the default because of the "generally miniscule error rate" of its judgment processing system. We agree that Rule 60(b)'s excusable neglect standard did not apply because the court had not entered a default judgment against KeyBank. *See Theriault v. Gauthier*, 634 A.2d 1255, 1256–57 (Me. 1993). Accordingly, the only issue was whether to set aside the clerk's entry of default based on Rule 55(c)'s good cause standard. Nonetheless, we conclude that any error regarding the applicable standard was harmless because KeyBank failed to establish an entitlement to relief under the less stringent good cause standard. *See Hamby*, 617 A.2d at 564.

---

4. In commenting on KeyBank's explanation of its judgment processing system, the court noted that "in [*Butler v.*] D/Wave, the documents didn't make it from [KeyBank's office in] Cleveland to either the court or to plaintiff's attorney; and here, there's some procedure that apparently didn't make it to Cleveland."

5. The court may have applied the excusable neglect standard because KeyBank's motion mischaracterized the court's January order as having granted a "default judgment," and requested relief pursuant to both M.R. Civ. P. 55 and 60(b). The January order expressly denied without prejudice Levine's request for a default judgment against KeyBank.

■ [¶ 17] KeyBank presented proof that it maintains a judgment processing system that has a low rate of error. The system is based in the bank's Cleveland office and has eleven employee positions dedicated to processing attachments, including trustee summons, served on Key-Bank throughout the United States. The office handles 300 to 1600 attachments per day. At the time of the bank's receipt of the trustee summons in this case, there were eight employees processing attachments because the office had three vacant positions.

[¶ 18] An officer at KeyBank's Auburn office was served with Levine's trustee summons on October 24, 2001. He signed the acknowledgment form and faxed the summons to the bank's Cleveland processing facility. KeyBank's phone log indicates that a fax was sent from Auburn to the Cleveland processing facility's fax line on October 25, 2001. The officer also sent the original summons via KeyBank's internal mail to the processing facility in Cleveland, where it was apparently lost. Michele Dauer, KeyBank's supervisor of judgment processing, stated in her affidavit, "I do not know what happened with this particular Trustee Summons."

[¶ 19] On November 26, 2001, the clerk's office entered default against KeyBank and sent notice of default to Levine and KeyBank's Auburn office. In a January 2, 2002 order, the court declared KeyBank trustee in an amount up to $450,000. The clerk sent copies of the order to the parties on January 3, 2002.

[¶ 20] To establish good cause "a party must show a good excuse for his or her untimeliness and a meritorious defense." *Truman,* 2001 ME 182, ¶ 9, 788 A.2d at 170. The good excuse and the meritorious defense requirements are "two distinct components," both of which must be satisfied in order to prevail on a Rule 55(c) motion. *Hart v. Terry L. Hopkins, Inc.,* 588 A.2d 1187, 1190 (Me.1991).

[¶ 21] An efficient judgment processing system, without more, does not amount to a good excuse. The foundation of a good excuse is a reasonable explanation, which KeyBank failed to provide.[6] For example, the bank offered no explanation for its failure to fill the vacancies in its judgment processing department; nor did it offer an explanation for the disappearance of the summons. Moreover, the bank failed to explain why its Auburn office could not simply answer the trustee process rather than send it to Ohio. The affidavits of the bank's employees offer no explanation whatsoever for KeyBank's failure to respond to the notice of default. The officer in the Auburn office merely stated, "Key-Bank has no other information of receiving anything else from the Court or plaintiff regarding this matter between October 24, 2001 and the entry of the order of default

---

6. In *Thomas v. Thompson,* we found that the defendant offered a good excuse for his untimely response to a summons and complaint: Thompson went to considerable lengths to assure a timely response to the cause of action against him. In addition to forwarding the summons and complaint to his insurer promptly, Thompson thereafter contacted his insurer to inquire about the case. When he was told that the company could not locate the information he sent them, he responded by arranging for a facsimile transmission of the documents to his insurer. In short, Thompson did everything that one could reasonably ask an insured to do to assure a timely response.
653 A.2d 417, 420 (Me.1995). *See also Boit v. Brookstone Co.,* 641 A.2d 864, 865 (Me.1994) (finding no good excuse for untimely response where, after being served with a complaint, defendant's agent transmitted the complaint to the defendant's corporate clerk, who then forwarded it to the defendant, who then forwarded it to its insurer, where it was further delayed in the mail room).

on January 2, 2002." In other words, KeyBank offers no reasonable explanation for the lost fax, the lost internal mail, or any other failures of the judgment processing system.

[¶ 22] Under these circumstances, we cannot say that the court's denial of Rule 55(c) relief works a plain and unmistakable injustice against KeyBank. Accordingly, the trial court acted within the scope of its discretion in denying KeyBank's Rule 55(c) motion. Because we conclude that Key-Bank failed to show good cause, we do not address whether it had a meritorious defense. *See Interstate Food Processing Corp. v. Pellerito Foods, Inc.*, 622 A.2d 1189, 1193 (Me.1993).

C. Section 2614 Analysis

■ [¶ 23] At the time of the approval of the trustee process in this case, section 2614 provided that "[w]hen a person summoned as trustee neglects to appear and answer to the action, he shall be defaulted and adjudged trustee *as alleged.*" 14 M.R.S.A. § 2614 (emphasis added). *See also Coombs*, 534 A.2d at 678. KeyBank argues that in order for it to be adjudged trustee in an amount up to $450,000, Levine must have alleged that KeyBank held that amount in the summons, the motion for default, or the pleadings. This argument is contrary, however, to the plain language of section 2614.

[¶ 24] We made clear in *Coombs* that when a person fails to reply to trustee process, section 2614 "clearly provides that the person is adjudged trustee as alleged" for a value up to "the amount alleged in the trustee summons." 534 A.2d at 679.

Similarly, in *Butler* we concluded that under section 2614, a defaulted trustee is subject to a "judgment awarding the full amount alleged to be due in the action, rather than the lesser total held by the bank." 2002 ME 41, ¶ 5 n. 7, 791 A.2d at 930. Neither the statute nor our cases interpreting it support the proposition that a plaintiff must separately allege that a trustee holds the amount stated in the summons.[7]

[¶ 25] The amount alleged in the trustee summons was $450,000. Accordingly, the court did not err in adjudging KeyBank trustee in the lesser amount of $264,422.95.

■ [¶ 26] The bank also asserts that, as applied in this case, section 2614 is a violation of its due process rights under the U.S. and Maine Constitutions. Specifically, the bank contends that the disparity between the amount of credit PhycoGen had with KeyBank—$7693.04—and the amount of the judgment—$264,422.95— renders the judgment grossly excessive and, therefore, unconstitutional.

■ [¶ 27] In *Harris v. Soley*, we addressed the constitutional considerations relevant in determining whether damage awards are excessive. 2000 ME 150, ¶ 31, 756 A.2d 499, 508. We must "determine whether a defendant has been put on sufficient notice that his or her conduct will be subject to a penalty and has notice of the possible scope of that penalty." *Id.* (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568–85, 116 S.Ct. 1589, 134 L.Ed.2d 809).

---

7. Section 2614 has recently been amended, but the amended statute does not apply to this proceeding. Instead of providing that a trustee who neglects to appear and answer "shall be defaulted and adjudged trustee as alleged," the statute now provides "the trustee must be defaulted and adjudged trustee to the extent that such a person holds goods, effects or credits of the principal defendant." 14 M.R.S.A. § 2614 (Supp. 2003). Thus, under the current statute, a defaulted trustee's liability is limited to the extent the trustee holds "goods, effects or credits of the principal defendant." *Id.*

[¶ 28] KeyBank had fair warning of the consequences of a failure to respond to the trustee summons served on it by Levine. The summons stated, "If you fail to file [a disclosure statement within twenty days], you will be defaulted and the court will find that you have such property in the stated value and you may become liable to plaintiff in that amount." *See Butler*, 2002 ME 41, ¶¶ 2, 5, 791 A.2d at 929–30; *Coombs*, 534 A.2d at 678–79; *see also* 14 M.R.S.A. § 2614. Accordingly, KeyBank had sufficient notice of the existence and scope of the possible penalty, and, as applied in this case, section 2614 did not impose a grossly excessive and unconstitutional fine.

D. Interpretation of the Severance Agreement's Acceleration Clause

■ [¶ 29] The severance agreement provided that PhycoGen's sale of "all or substantially all of its assets in accordance with a plan of liquidation" would trigger the acceleration of all outstanding payments, requiring payment in full within thirty days. Levine contends that PhycoGen's sale of its assets was pursuant to a plan of liquidation that triggered the acceleration clause. The trial court concluded, however, "that even though most of the assets were sold off at minimal amounts, it was not pursuant to a plan of liquidation as contemplated by the agreement and plaintiff is not entitled to acceleration of payment." [8]

■ [¶ 30] Whether a contract term is ambiguous is a question of law that we review de novo. *Villas by the Sea Owners Ass'n v. Garrity*, 2000 ME 48, ¶ 9, 748 A.2d 457, 461. "If a contractual provision is unambiguous, it will be given its plain, ordinary, and generally accepted meaning. Interpretation of such a contract is a matter of law." *Id.* (citation omitted).

[¶ 31] PhycoGen liquidated its physical assets for $18,442 prior to filing bankruptcy. The bankruptcy trustee then sold the remainder of its assets—its intellectual property—for $27,500. The language in the acceleration provision is unambiguous, and the trial court was not compelled to find that the sale of PhycoGen's physical assets by the company, and the separate sale of PhycoGen's intellectual property by the bankruptcy trustee, were "in accordance with a plan of liquidation." Consequently, the court did not err in concluding that the acceleration clause had not been triggered.

The entry is:

Judgment affirmed.

---

8. The severance agreement provided that PhycoGen would make payments to Levine over a five-year period. The following conditions would trigger the acceleration clause, however, requiring payment within thirty days:
  (a) the Company makes a private offering of its stock which nets the Company not less [than] $10,000,000 in new capital;
  (b) the Company makes an initial public offering of its stock;
  (c) the Company merges or consolidates with a publicly-held company; or
  (d) the Company sells all or substantially all of its assets in accordance with a plan of liquidation; or
  (e) the Company sells an interest in any one technology for not less than $20,000,000.