2007 ME 138

**R.C. MOORE, INC.**

v.

**LES–CARE KITCHENS, INC.**

**and**

**Wachovia Bank, N.A., Trustee.**

Supreme Judicial Court of Maine.

Argued: June 20, 2007.
Decided: Sept. 25, 2007.

—————

Christopher B. Branson (orally), Kelly W. McDonald, Murray, Plumb & Murray, Portland, for plaintiff.

Bruce P. Merenstein (orally), Kate A. Kleba, Schnader Harrison Segal & Lewis, LLP, Philadelphia, PA, and Andrew W. Sparks, Drummond & Drummond, LLP, Portland, for Wachovia Bank, N.A., defendant.

Kate Debevoise, Debevoise, Bernstein Shur Sawyer & Nelson, P.A., Portland, for Les–Care Kitchens, Inc., defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

ALEXANDER, J.

[¶ 1] Wachovia Bank, N.A. (Wachovia) appeals from a judgment entered in the Superior Court (Cumberland County, *Warren, J.*) denying Wachovia's motion to set aside an entry of default and finding Wachovia liable as trustee for assets of Les–Care Kitchens, Inc. (Les–Care) in the amount of $449,000.

[¶ 2] Wachovia argues that the trial court (1) did not have jurisdiction over its accounts; (2) erred in finding that Wachovia waived its right to assert its security interest as an affirmative defense; (3) abused its discretion in denying Wachovia's motion to set aside the entry of default; and (4) erred in its finding that twelve hours from receipt of service was a reasonable amount of time for Wachovia to act in identifying and attaching, on trustee process, Les–Care's funds. We are in agreement that the trial court did not err with regard to the first three points raised in Wachovia's appeal. Because we are evenly divided on Wachovia's fourth point on appeal, we affirm the judgment.

## I. CASE HISTORY

[¶ 3] The central facts in this case are largely undisputed. The action arises from a contract dispute between R.C. Moore, Inc. (R.C. Moore), a Maine transportation company, and Les–Care. Les–Care maintained a business-banking account with Wachovia through a branch office in Connecticut. In the underlying action against Les–Care, the court issued an order on July 15, 2004, approving attachment and attachment on trustee process in favor of R.C. Moore in the amount of $449,000. *See* M.R. Civ. P. 4A (attachment), 4B (trustee process).

[¶ 4] On July 19, 2004, a Kennebec County Deputy Sheriff served five trustee summonses for that amount on Corporation Services Company (CSC), an authorized agent of Wachovia Bank, N.A. and other Wachovia entities. CSC is located at a law office in Augusta. The service was "likely accomplished" no later than 2 P.M. The five summonses were addressed to: Wachovia Bank, N.A., Wachovia Capital Markets, LLC, Wachovia Securities, LLC, Wachovia Securities Financial Network, and Wachovia Securities, Inc.[1] Each summons contained a warning that failure to respond within twenty days would result in a default. Although Wachovia does not have an office in Maine, it is undisputed that Wachovia does business in Maine.

[¶ 5] On July 19, 2004, the same day the summonses were served, the five trustee summonses were shipped from CSC's office in Maine to a CSC office in Wilmington, Delaware. On July 20, 2004, the CSC office in Delaware received the summonses and sent them to an intake paralegal at a Wachovia office in Charlotte, North Carolina. On July 21, 2004, three of the summonses were received and date stamped at Wachovia's Charlotte office. They were then sent to the Wachovia Securities legal department in Richmond, Virginia. One of the three summonses was logged into the intake paralegal's computer tracking system.[2] The summons addressed to Wachovia Bank, N.A. was not among those logged into the tracking system. It is unknown what happened to the Wachovia

---

1. The claims against the four other Wachovia entities—Wachovia Capital Markets, LLC, Wachovia Securities, LLC, Wachovia Securities Financial Network, and Wachovia Securities, Inc.—were dismissed during the hearing, and therefore, are not subject to this appeal.

2. The one summons directed to a Wachovia entity that was logged in generated a timely answer by Wachovia Securities, LLC that it held no Les–Care accounts.

Bank summons after it left the CSC Delaware office.

[¶ 6] The trustee summons addressed to Wachovia Bank, N.A. called for a response to be filed within twenty days of service, or by August 8, 2004. When no answer was filed by that date, R.C. Moore sought an entry of default against Wachovia. The clerk entered the default on August 17, 2004. A copy of the entry of default was sent by the clerk's office to CSC on or about August 19, 2004.

[¶ 7] On August 18, 2004, R.C. Moore filed an application for a default judgment against Wachovia as trustee in the amount of $449,000. This motion was served on CSC, as Wachovia's agent, by mail and included a notice that an opposition to the motion must be filed within twenty-one days pursuant to M.R. Civ. P. 7(c)(2).

[¶ 8] On September 15, 2004, Wachovia filed a motion to set aside the August 17, 2004, entry of default, and a belated answer to the trustee summons. In its answer to the trustee summons, Wachovia stated that it had in its possession as of July 21, 2004, "a credit of $6,717.39 in the name of Les–Care Kitchens, Inc." This amount was attached on trustee process.

[¶ 9] In its motion to set aside the default, Wachovia argued that it had a procedure in place to guarantee timely response and argued that its possession of only $6717.39 constituted a meritorious defense. Pursuant to 14 M.R.S. § 2603 (2006), a trustee is liable only for the amount of "all goods, effects or credits of the principal defendant ... in the trustee's possession." Wachovia's motion to set aside the default and its answer did not assert any personal jurisdiction defense or any argument that Wachovia possessed a security interest in any funds in Les–Care's accounts.

[¶ 10] Prior to the events in this case, Les–Care had received over $11.3 million dollars in loans from Wachovia, including a $2 million dollar loan to Lou–Jay Associ-ates, an affiliated company owned by Les–Care's principals, a $6.3 million dollar loan, and a $3 million dollar line of credit. To secure the loans, Wachovia had a security agreement that covered "all funds on deposit with the Bank." Though Les–Care was on notice that, because of late payments, it was in violation of certain terms of its loan agreements, Wachovia had not yet formally declared Les–Care in default.

[¶ 11] On July 19, 2004, the date of service of the trustee summonses on Wachovia's agent in Maine, Les–Care's primary account at Wachovia had an opening balance of $684,842.43. Three deposits totaling $72,194.41 were credited to the account and four withdrawals totaling $512,130.51 were removed from the account on that day. The withdrawals included a $492,000 sweep/loan payment to Wachovia.

[¶ 12] Wachovia procedures dictate that all transactions are held and then posted to the account after the close of business. The July 19 transactions were posted sometime after 2 A.M. on July 20. After all transactions on July 19 were posted, Les–Care's primary account had a balance of $85,392.84. Wachovia allowed funds to leave the Les–Care account before and after that date "in the normal course of business."

[¶ 13] In Wachovia's reply to R.C. Moore's opposition to Wachovia's motion to set aside entry of default, Wachovia again did not raise jurisdictional defenses or assert that it had any security interest in the funds in Les–Care's bank accounts. These issues were raised for the first time a year later when Wachovia filed a motion for summary judgment on September 26, 2005. The court denied Wachovia's motion for summary judgment.

[¶ 14] The court held a three-day bench

trial on the trustee issue.[3] After reviewing the evidence discussed above, the court noted that "Wachovia's case presents a more sympathetic picture than was presented in [*Levine v. KeyBank Nat'l Ass'n*, 2004 ME 131, 861 A.2d 678] because Wachovia Bank has no office in Maine and therefore any trustee summons served upon an authorized agent had to be transmitted to Wachovia's offices out of state." However, the court found that under the circumstances of this case, "Wachovia Bank had a reasonable opportunity to act on the attachment within 12 hours of the time CSC was served in Augusta." The court also concluded that Wachovia "has failed to demonstrate a reasonable excuse for the default." Accordingly, the court entered an order denying Wachovia's motion to set aside the default, and found Wachovia liable as trustee in the amount of $449,000, the entire amount of the trustee process approved against Les–Care.

[¶ 15] The court reached this result interpreting 14 M.R.S. § 2603 (2006) which provides, in pertinent part, that:

> Service on the trustee binds all goods, effects or credits of the principal defendant entrusted to and deposited in the trustee's possession, to respond to the final judgment in the action, as when attached by ordinary process if process describing the principal defendant with reasonable certainty is received at a time and in a manner that affords the trustee a reasonable opportunity to act on it.

[¶ 16] The court determined that Wachovia had a "reasonable opportunity to act" on the trustee service, within twelve hours of completion of service on CSC and attach funds in the account.

[¶ 17] This appeal followed.[4]

## II. LEGAL ANALYSIS

### A. Superior Court Jurisdiction

■ [¶ 18] Whether subject matter or personal jurisdiction exists is a question of law that we review de novo. *Norris Family Assocs., LLC v. Town of Phippsburg*, 2005 ME 102, ¶ 8, 879 A.2d 1007, 1011; *Dorf v. Complastik Corp.*, 1999 ME 133, ¶ 15, 735 A.2d 984, 990.

■ [¶ 19] Wachovia argues that the Superior Court did not have personal jurisdiction over the case because Les–Care maintained its Wachovia Bank accounts in Connecticut. Wachovia asserts that it was necessary to find the branch in Connecticut where Les–Care's accounts were located and serve the trustee process on that branch. Such a requirement would make service of trustee process an almost impossible task for a creditor attempting to serve a national bank with hundreds or thousands of offices. Service on the Bank, not the branch, is all that due process requires.

■ [¶ 20] Because Wachovia failed to raise the defense of lack of personal jurisdiction in its answer to the summons, the defense has not been preserved. M.R.

---

3. During the course of the trustee process and contract proceedings, Les–Care entered bankruptcy, triggering an automatic stay on February 22, 2005. In October 2005, the trial court issued an order severing R.C. Moore's underlying breach of contract claim against Les–Care from R.C. Moore's trustee process claim against Wachovia.

4. Wachovia filed its first notice of appeal in the present case on May 26, 2006. We stayed the briefing in August 2006, due to the automatic stay from Les–Care's bankruptcy. After a discharge from bankruptcy was filed, and the stay lifted on the underlying suit between R.C. Moore and Les–Care, the trial court rendered a judgment in November 2006, in favor of R.C. Moore in the amount of $515,161.49 for breach of contract. Thereafter, Wachovia filed a second notice of appeal.

Civ. P. 12(h)(1)(B); *Sanders v. Sanders,* 1998 ME 100, ¶ 8, 711 A.2d 124, 127.

[¶ 21] Subject matter jurisdiction, however, may be challenged at any time. *Sanders,* 1998 ME 100, ¶ 10, 711 A.2d at 127; *Dillon v. Johnson,* 322 A.2d 332, 335 (Me.1974). Wachovia has stipulated to doing business in Maine and has a registered agent in Augusta upon which notice can be served. Any foreign corporation doing business in Maine may be summonsed as trustee. 14 M.R.S. § 2608 (2006). Because trustee process is ancillary to an underlying action, Wachovia's attack on subject matter jurisdiction relates to the underlying contract action between R.C. Moore and Les–Care. *See Sanders,* 1998 ME 100, ¶ 10, 711 A.2d at 127. The underlying contract action was filed in Maine Superior Court. R.C. Moore is headquartered in Scarborough, Maine. At the time of this appeal, the court's subject matter jurisdiction over the contract dispute had not been challenged and final judgment had been entered.

[¶ 22] Therefore, the Superior Court had subject matter jurisdiction to decide the trustee process dispute.

### B. Wachovia's Security Interest

[¶ 23] Wachovia argues that R.C. Moore could not attach any funds in the Les–Care bank accounts at Wachovia because all the funds were subject to Wachovia's pre-existing perfected security interest resulting from the large debt owed to it by Les–Care. When a trustee defaults, the trustee is liable only to the extent that the defaulting trustee "holds goods, effects or credits of the principal defendant otherwise available to satisfy the unsatisfied portion of final judgment." 14 M.R.S. § 2614 (2006).

[¶ 24] Affirmative defenses must be stated in a responsive pleading pursuant to M.R. Civ. P. 8(c) and 12(b). We have recognized that "[g]enerally a failure to plead an affirmative defense results in the waiver of that defense ...." *Payson v. Cohen,* 158 Me. 297, 301, 183 A.2d 510, 512 (1962). Even assuming, arguendo, that Wachovia had a security interest in the funds, it failed to raise the affirmative defense in a timely manner in its answer to the trustee summons and in its motion to set aside the default judgment.

[¶ 25] At the time the trustee summons was served, Wachovia had not commenced a formal default action against Les–Care. Wachovia also admitted to having in its possession $6717.39 of Les–Care's funds, which it stated had been attached. We have previously held that a party is bound by an assertion of fact in a responsive pleading. *See Bahre v. Liberty Group, Inc.,* 2000 ME 75, ¶ 15, 750 A.2d 558, 562. Furthermore, after service of the trustee summons, Wachovia allowed funds to leave the Les–Care account to pay unsecured third parties.

[¶ 26] Recognizing that a trustee has "[t]he burden of discharging himself by clear and definite statements," *Thompson v. Dyer,* 100 Me. 421, 427, 62 A. 76, 79 (1905), and for the reasons stated above, Wachovia has not preserved the defense of priority of security interest.

### C. Default Judgment

[¶ 27] Wachovia also challenges the court's denial of its motion to set aside the entry of default judgment. We review the denial of a motion to set aside a default for abuse of discretion. *Maroon Flooring, Inc. v. Austin,* 2007 ME 75, ¶ 6, 927 A.2d 1182, 1183–84; *Levine,* 2004 ME 131, ¶ 13, 861 A.2d at 683. We "will vacate the judgment only 'if the denial works a plain and unmistakable injustice against the defendant.'" *Levine,* 2004 ME 131, ¶ 13, 861 A.2d at 683 (quoting *Truman v. Browne,* 2001 ME 182, ¶ 9, 788 A.2d 168, 170).

[¶ 28] Pursuant to M.R. Civ. P. 55(c), a court may set aside an entry of default for "good cause." In order to establish "good cause," a party must show both (1) a good excuse for his or her untimeliness, and (2) a meritorious defense. *Levine*, 2004 ME 131, ¶ 13, 861 A.2d at 683 (quotation marks omitted). "An efficient judgment processing system, without more, does not amount to a good excuse." *Id.* ¶ 21, 861 A.2d at 684.

[¶ 29] The record supports the court's finding that Wachovia failed to offer a reasonable excuse as to why the Wachovia Bank summons was mislaid. A system requiring a trustee summons to pass through four offices in four states over several days before it can be effective to attach an account provides many opportunities for an item to be lost or mislaid. Consequently, the court did not abuse its discretion in denying Wachovia's motion to set aside entry of default.

D. "Reasonable Opportunity" to Attach the Funds

[¶ 30] The trial court concluded that twelve hours from receipt of service was a reasonable time for Wachovia to act to attach Les–Care's accounts, pursuant to 14 M.R.S. § 2603 (giving Wachovia "a reasonable opportunity to act on" the trustee process). Because we are evenly divided on this issue, we affirm the trial court's judgment on this issue. *See State v. Thongsavanh*, 2007 ME 20, ¶ 33, 915 A.2d 421, 428 (citing *Hale v. Antoniou*, 2003 ME 52, 820 A.2d 586).

The entry is:

Judgment affirmed.