STATE OF MAINE                                  SUPERIOR COURT
KENNEBEC, ss                                    CIVIL ACTION
                                                DOCKET NO. CV-06-221
                                                *NM-KEN- 4/4/2008*


PINE STATE TRADING CO.

            Plaintiff

    v.                                          DECISION AND ORDER


WINN GENERAL STORE and
NADEAU BRAGDON, INC. d/b/a
A & B CONVENIENCE STORES,

            Defendants


On February 8, 2007, the court adjudged Brewer Federal Credit Union (Credit Union or trustee) to be a trustee of the assets of defendant Nadeau Bragdon, Inc., d/b/a A & B Convenience Stores (Nadeau). The question before the court is how much of Nadeau's assets are under trusteeship. The plaintiff asserts that the trustee is chargeable in the amount of $38,564.05[1] and the trustee asserts that is chargeable in the amount of $829.83.

Facts

On September 19, 2006, the court issued an ex parte order for attachment and trustee process against the Nadeau. A summons was served on David Stanhope, then a collections manager for the Credit Union, on September 20, 2006 at 2:15 p.m. (Tr. at 15; Ex. 3 and 12.) From 2:15 p.m. until the Credit Union closed at 4:00 p.m. on September 20, 2006, Nadeau's balance at the Credit Union was $829.83. (Tr. at 25; Ex. 12.) On the

---

[1] This is the amount of the default judgment entered against defendant.

morning of September 21, 2006, between 8:06 and 8:12 a.m., five deposits were made that brought the Nadeau's account balance to $48,959.29. (Tr. at 24-29; Ex. 6; Ex. 5 at 6.) Four checks/drafts were drawn on the account and two more deposits were made at 12:11 p.m. and 12:12 p.m.; at 12:12 p.m., the account balance was $47,721.81. (Id.)

David Stanhope, who was responsible for processing the summons, had never previously dealt with a trustee summons. (Tr. at 10-13.) Nevertheless between 12:11 p.m. and 4:00 p.m. on September 21, Mr. Stanhope completed a disclosure in response to the trustee summons indicating that Nadeau's balance was $47,721.81. (Tr. at 29; Ex. 4.) Mr. Stanhope did not freeze or hold the proceeds in defendant's account. (Tr. at 16.)

## Discussion

### I. Were the funds "contingent" and therefore not chargeable to the Credit Union as trustee?

The Credit Union argues that any funds in defendant's account in excess of $829.83 were uncollected funds and therefore provisional. Accordingly, its obligation to the defendant was contingent on final payment of the checks by payor banks. See 11 M.R.S.A. §§ 4-201(1); 4-212(1); 4-212(4); 4-213(1-A).

Notwithstanding the fact that all checks eventually were paid, the Credit Union argues their contingency as of September 20th or 21st is pivotal because "[n]o person shall be adjudged trustee...[b]y reason of any money or other thing due from him to the principal defendant unless, at the time of the service of the summons upon him, it is due absolutely and not on any contingency." 14 M.R.S.A. § 2602(4). The plaintiff argues that section 2602(4) applies only to debts owed by a trustee to a principal defendant. The plaintiff argues further that while the funds in the checking account are provisional credits, they are not funds due to the principal defendant by the trustee but are sums held on account for the defendant due from third parties. See 14 M.R.S.A. § 2628 ("Any

money or other thing due absolutely to the principal defendant may be attached before it has become payable, but the trustee is not required to pay or deliver it before the time appointed therefor by the contract.")

To the extent that any payment was contingent, the payment was not from the Credit Union to the principal defendant; the payment was from the payor banks to the Credit Union. In the instance of failure, the right of collection and therefore the contingency of payment could be sought from the principal defendant to the Credit Union through "revok[ing] the settlement given by it, charg[ing] back the amount of any credit given for the item to its customer's account or obtain[ing] refund from its customer..." 11 M.R.S.A. § 4-212(1). Payment from the Credit Union to the principal defendant for purposes of service of trustee process was not contingent. The Credit Union's policy provided that funds are available on the same business day deposit is received, and the Credit Union's original sworn disclosure of the principal defendant's balance was $47,721.81. (Tr. at 29; Ex. 4; see also 14 M.R.S.A. § 2710 ("The answers and statements sworn to by a trustee shall be deemed true in deciding how far he is chargeable until the contrary is proved, but the plaintiff, defendant and trustee may allege and prove any facts material in deciding that question."); Hussey v. Titcomb, 127 Me. 423, 425 (1929) (trustee was administrator of an estate; "[t]he contingency referred to in statute is one which may prevent the principal from having any claim whatever or right to call the trustee to account or settle with him. It is not a contingency as to whether anything may be found due from the trustee to the principal, who has an absolute right to call upon the trustee to render the account and make the settlement."); Williams v. Androscoggin and Kennebec Railroad Co., 36 Me. 201, 209-10 (1835) (principal defendant had an unfulfilled service contract with trustee railroad

company); see also Loyal Erectors, Inc. v. Hamilton & Son, Inc.,, 312 A.2d 748, 752-53 (Me. 1973) (payment of contract dependent on architect's approval of work); Holmes v. Hilliard, 130 Me. 392, 394-95 (1931) (principle defendant was liable under contract to supply corn to trustee which had not yet been harvested). In all of these cases, payment is due from the trustee to the principal defendant dependent on some action by the defendant.

## II. When did the account balance attach?

Section 2603 provides:

> Service on the trustee binds all goods, effects or credits of the principal defendant entrusted to and deposited in the trustee's possession, to respond to the final judgment in the action, as when attached by ordinary process if process describing the principal defendant with reasonable certainty is received at a time and in a manner that affords the trustee a reasonable opportunity to act on it...

14 M.R.S.A. § 2603. The Credit Union argues that the amount to be held by the trustee is determined as of the time process is served if that process is received at a time and in a manner that affords the trustee a reasonable opportunity to act on it. The Credit Union argues further that because process was served on September 20, 2006 at 2:15 p.m. and the Credit Union was open until 4:00 p.m., the Credit Union had reasonable time to respond on the 20th and the amount held by the trustee is the $829.83 balance that remained the same until the next day. The plaintiff argues that the amount to be held is determined when the trustee acts unless the time required for action is unreasonable. The plaintiff concludes that because the Credit Union responded to process in the afternoon of September 21, 2006, and the time between 2:15 p.m. on September 20, 2006 and the following afternoon is not unreasonable, the amount held should be the $47,721.81 reported by the Credit Union.

The Law Court's has held that such determination "must be made as of the time the trustee process was served, since the validity of the trustee process depends upon the state of facts as they existed at that moment." Loyal Erectors, 312 A.2d at 752. The Law Court has, however, in the context of a default for failure to respond to a trustee summons, affirmed the trial court's determination that twelve hours from receipt of service was "a reasonable time for [trustee] to act to attach [defendant's] accounts." R.C. Moore v. Les-Care Kitchens, Inc., 2007 ME 138, ¶ 30, 931 A.2d 1081, 1087. The Law Court was evenly divided on the question and affirmed the Superior Court's decision without comment. Id. The Superior Court concluded that the language added to section 2603 by amendment in 2003 regarding reasonability "supercedes prior law suggesting that an attachment is effective at the time of service." R.C. Moore, Inc. v. Les-Care Kitchens, Inc., CUMSC-CV-04-390 at *21 (Me. Super. Ct., Cum. Cty., May 5, 2006) (Warren, J.).[2]

In this case, the party asserting the Credit Union's delay in acting upon the attachment was unreasonable is the Credit Union itself. In R.C. Moore, the Superior Court expressed the policy concerns militating in favor of allowing a minimal time period for trustee action:

> If anything more than a minimum time were allowed, a trustee would have the ability to manipulate the transactions in an account so as to frustrate the attachment in cases wherethe [sic] trustee had claims of its own to the assets in question ... Even where a trustee does not have its own claim to the assets, the trustee might, because of an ongoing business relationship, have reasons to be loyal to the party whose funds have been trusteed.

Id. at *23.

---

[2] "What this means is that if service had been made ... in Augusta, Maine at 11 a.m. on July 19, the presence of $684,842.43 in Les-Care's account at the time would not necessarily make the Bank liable as a trustee if all the monies in question had been withdrawn from a Wachovia branch in Connecticut thirty minutes later. What the statute requires is a fact-specific inquiry in any given case as to when a bank or other trustee has had a reasonable opportunity to act on the attachment." Id. at *22.

Certainly no such attempt to frustrate the attachment is present here. Process was served less than two hours prior to the close of business. (Tr. Ex. 12.) Less than two business hours later, the account balance had substantially increased. (Tr. Ex. 12.) An employee inexperienced in dealing with a summons at a credit union that closes at 4:00 p.m. waited until the next day to respond. (Tr. at 10-13; 15-16.) The Credit Union's reaction time was not unreasonable.

The entry is

> The Credit Union is ADJUDGED to be trustee in the amount of $38,564.05 plus 5.36% prejudgment interest, 9.42% post-judgment interest, and costs.

Dated: April 4, 2008

Nancy Mills
Justice, Superior Court