2014 VT 92

# Stanley S. Stroup and Sylvia Stroup v. Peter Doran and Peter Doran Landscape Design, LLC

[109 A.3d 400]

No. 13-420

Present: Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.

Opinion Filed August 1, 2014

Motion for Reargument Denied September 2, 2014

*Robert E. Woolmington* and *Merrill E. Bent* of *Witten, Woolmington, Campbell & Bernal, P.C.*, Manchester Center, for Plaintiffs-Appellants.

*Lawrin P. Crispe* of *Crispe & Crispe*, and *Mark L. Zwicker* of *Mark L. Zwicker, P.C.*, Brattleboro, for Trustee-Appellee Brattleboro Savings and Loan Association.

¶ 1. **Crawford, J.** Plaintiffs Sylvia and Stanley Stroup appeal from an order of the superior court, civil division, denying their motion for default judgment against trustee Brattleboro Savings and Loan Association (BSL). We affirm.

¶ 2. In 2007, plaintiffs sued defendants Peter Doran and Peter Doran Landscape Design, LLC for breach of contract, fraud, and consumer fraud after defendants failed to perform landscaping for plaintiffs. Plaintiffs obtained a judgment against defendants in Bennington Superior Court. Defendants failed to pay the judgment. Plaintiffs obtained a writ of execution, and the court approved plaintiffs' motion for trustee process to attach funds owned by defendants and held by BSL.

¶ 3. BSL disclosed to plaintiffs that it held a balance of $2,853.05 in a checking account titled in the name of one of the defendants. A few days later, the parties stipulated that BSL would release $750 to plaintiffs, and that BSL would then be discharged as a trustee and defendant's account would be free of any lien or charge benefitting plaintiffs. Defendants further agreed to pay $3,500 to plaintiffs before January 31, 2008. BSL paid plaintiffs $750. Plaintiffs claim that defendants never paid the remainder of their debt.

¶ 4. On July 22, 2013, plaintiffs served BSL with another trustee summons. BSL did not reply within thirty days, and on August 27 plaintiffs moved for default against BSL and entry of judgment against it as trustee for $24,155.12, the balance due under the judgment. On September 12, the court ordered the clerk to schedule a hearing on plaintiffs' motion, and directed that a copy of plaintiffs' motion and the notice of hearing be served on BSL.

¶ 5. On September 16, BSL filed a trustee disclosure indicating that it did not have any of defendants' property in its possession. The court subsequently entered an order denying plaintiffs' motion for default judgment against BSL. The court stated that "[a]lthough Trustee failed to make a timely disclosure, its disclosure now made in response to Plaintiff[s'] motion for default shows that it holds no assets for the benefit of Defendant[s]. Default judgment under these circumstances would be inequitable." Plaintiffs appealed.

¶ 6. Plaintiffs argue that the trial court erred in denying their motion for default because applicable Vermont law makes default mandatory when a trustee fails to serve a disclosure within thirty days. Plaintiffs did not contest the information contained in the trustee's disclosure form or request an evidentiary hearing below. See V.R.C.P. 4.2(g) (stating that party who intends to contest information contained in trustee's disclosure is entitled to evidentiary hearing upon written request). Nor do they contest the information on appeal. Their sole argument before this Court is that default was mandatory under 12 V.S.A. § 3062 and V.R.C.P. 4.2(f).

¶ 7. Vermont's trustee process statute provides that "[w]hen a person summoned as trustee does not serve his disclosure within such time as the supreme court may by rule provide, he shall be defaulted, and adjudged a trustee." 12 V.S.A. § 3062. Civil Rule 4.2(f) requires a trustee to serve a disclosure "within 30 days after the service of the trustee summons upon the trustee, unless the court otherwise directs." A person who is adjudged trustee by default is liable "for the amount of damages and costs recovered by the plaintiff in the action, and payable in money at the time the judgment is rendered against the principal defendant." 12 V.S.A. § 3063.

¶ 8. ▮ Thus, "[o]nce process has been served, heavy responsibilities rest on the trustee." *First Wisconsin Mortg. Trust v. Wyman's, Inc.*, 139 Vt. 350, 355, 428 A.2d 1119, 1123 (1981). We explained in *First Wisconsin* that:

> If a trustee fails to disclose as the statutes require, it may be defaulted. In such case, the goods, chattels and estate of the trustee itself are chargeable for the amount of the judgment recovered by the plaintiff. Thus, the trustee has . . . a very direct interest in proper disclosure for the protection of its own assets from assessment. This result may follow not only from a total failure to disclose, but also if the disclosure is incomplete or negligently inadequate.

*Id.* at 356, 428 A.2d at 1123 (citations omitted).

¶ 9. ▮ ▮ However, under the plain language of Rule 4.2(f), the court has discretion to extend the thirty-day deadline for service of a trustee disclosure. See V.R.C.P. 4.2(f) (requiring service within

thirty days "unless the court otherwise directs"). Here, the trial court effectively extended the deadline in Rule 4.2(f) by ordering that BSL be notified of plaintiffs' motion for default and accepting BSL's late disclosure, which BSL filed prior to the date of the hearing on the motion. This was not an abuse of discretion. As we noted in a recent case:

> Because "a judgment by default effectively deprives a defendant of an opportunity to have the merits . . . determined through the normal adversary judicial process," we have held that "the rules relating to default judgments should be liberally construed in favor of defendants, and of the desirability of resolving litigation on the merits, to the end that fairness and justice are served."

*Ying Ji v. Heide*, 2013 VT 81, ¶ 12, 194 Vt. 546, 82 A.3d 1160 (quoting *Desjarlais v. Gilman*, 143 Vt. 154, 157, 158-59, 463 A.2d 234, 236, 237 (1983)).

¶ 10. ■ The trial court acted within its discretion to extend the deadline and accept the late disclosure in order to avoid a default judgment against BSL, which held no funds belonging to defendants. Although the trial court was not obligated to extend the deadline, its decision to accept the late filing did not violate the statutory scheme. The statute imposes no fixed deadline for service of a trustee disclosure. 12 V.S.A. § 3062. The only deadline is contained in the associated rule, V.R.C.P. 4.2(f), which the trial court appropriately applied in a liberal fashion in order to avoid an unjust result.

¶ 11. The dissent holds up the experience of the Maine courts as a proposed model for Vermont based on the view that "identical regulatory standard[s]" are present in both states. *Post*, ¶ 22. In fact, the current legislation in Maine is now quite different. In addition, *Levine v. KeyBank National Ass'n*, 2004 ME 131, ¶ 19, 861 A.2d 678, and the other decisions cited by the dissent are cases in which default was actually entered by the court clerk and Rule 55 of the Maine Rules of Civil Procedure applied.

¶ 12. We first consider the legislative differences. It is true that both the applicable statutory provisions and the civil rules are generally similar in the two states. Compare 12 V.S.A. § 3062, with 14 Me. Rev. Stat. § 2614; V.R.C.P. 4.2, with Me.R.C.P. 4B. How-

ever, following the events which gave rise to the decision in *Levine* and the forfeiture of $264,422 by the trustee in that case, the Maine legislature amended its trustee process statute to limit any default to amounts actually held by the trustee. *Levine*, 2004 ME 131, ¶ 9; 14 Me. Rev. Stat. § 2614. Under the law of Maine currently in effect, the recovery against BSL in this case would be zero.

¶ 13. This case is also procedurally different from the Maine cases cited by the dissent. In this case, neither an entry of default nor a default judgment against the trustee ever issued. For this reason, the remedy proposed by the dissent of a motion under Civil Rules 55 or 60 would be premature. Instead, the trial court exercised its separate authority under Rule 4.2(f) to extend the time for the trustee's response prior to entry of judgment.

¶ 14. In contrast, the Maine cases concern the post-judgment remedies available under Rule 55 and Rule 60. The *Levine* decision explicitly declined to consider remedies arising under Maine Civil Rule 4B(j) on the ground that these are barred by the clerk's entry of default. See *Levine*, 2004 ME 131, ¶ 9 ("Rule 4B(j) is designed to afford a trustee an immediate opportunity to be heard following its receipt of an ex parte trustee summons, and it is not an alternative avenue for challenging a default."). By shifting the analysis into the realm of post-judgment remedies, the dissent effectively removes the trial court's additional authority under Rule 4.2(f) to extend the time for the trustee to respond.

*Affirmed.*

¶ 15. **Dooley, J.,** dissenting. I fully endorse the desirability of resolving litigation on the merits and of avoiding default judgments. But the discretion we grant to the trial court to give relief from a default judgment must have some limits and be governed by some standards; otherwise, we simply create injustice under the guise of preventing it. I cannot go along with the standardless, unlimited discretion the majority creates, and therefore dissent.

¶ 16. The defendant in this appeal is a bank, which is in the business of holding money for customers. In this business, it is routinely subject to attempts by creditors to find funds that can be used to pay a judgment of a bank customer. It is undisputed in this case that plaintiff, a creditor of a bank customer, properly invoked the trustee process statute, gave proper notice to the

bank, and required the bank to disclose what funds it had belonging to the judgment debtor. The bank's obligation was routine and should have been very familiar.

¶ 17. The governing statute, 12 V.S.A. § 3062, provides that the alleged trustee must disclose within the time limit this Court provides by rule or "he *shall* be defaulted, and adjudged a trustee." (emphasis added); see also *id.* § 3063 (determining amount of judgment and execution). Vermont Rule of Civil Procedure 4.2(f) requires the bank to "serve a disclosure under oath within 30 days after the service of the trustee summons" but adds "unless the court otherwise directs" — language the majority relies upon to allow late disclosure here. In this case, the bank finally made its disclosure almost a month after the thirty-day time limit.

¶ 18. For three reasons, I conclude that the bank's failure to either disclose or seek an extension of time in which to disclose within thirty days made it a trustee under § 3062. Section 3062 provides that the bank "*shall be defaulted*" unless it discloses during the time period established by rule, which is thirty days unless otherwise ordered. The thirty days expired with no order of a different time period. At that time, the mandatory consequence of § 3062 went into effect.

¶ 19. The majority's construction of Rule 4.2(f), that the trial court can extend the time period at any time and for any duration retroactively, is not consistent with the statute. Under that theory, there is no time limit and no mandatory default because the trial court can always retroactively correct the default. In my judgment, the majority's construction reads the "shall be defaulted" language out of the statute.

¶ 20. The second reason is that the majority's theory gives standardless discretion to the trial judge where such blanket authority is unnecessary. In reaching its conclusion, the majority quotes and relies upon *Ying Ji v. Heide*, 2013 VT 81, 194 Vt. 546, 82 A.3d 1160, a decision I joined, which finds excusable neglect for the failure of plaintiff's lawyer to attend a status conference and grants relief under Civil Rule 60(b). In this case, the bank provided no explanation for why it failed to make a disclosure within the deadline; therefore, we have no indication of whether it could meet the Rule 60(b) standard of "mistake, inadvertence, surprise, or excusable neglect," or the directly controlling "good cause" standard applicable to setting aside default entries in Rule

55(c). See *Ying Ji*, 2013 VT 81, ¶ 10. The trial court decision is based solely on the fact that the bank defaulted, putting it in the same position as any defendant who has defaulted and is required to pay a judgment it may not owe.

¶ 21. If we reverse the trial court's decision in this case, the bank is put in a position comparable to that of the plaintiff in *Ying Ji*, 2013 VT 81. The bank can file a Rule 55(c) motion to set aside the default and seek discretionary relief based on the cause of the failure to make a timely disclosure. It is not a just result that some defendants have to show excusable neglect or comparable grounds while some defendants do not have to explain or justify their default in any way. Nor is it a just system where a trial judge has total decisionmaking power over whether to relieve an alleged trustee from any liability for any reason.

¶ 22. The decisions from the Maine courts under the identical regulatory standard demonstrate how the system should properly be implemented. Despite language in Maine Rule of Civil Procedure 4B(e) that was formerly identical to that in our statute, no Maine decision authorized the trial judge to retroactively change the disclosure deadline, as the majority endorses here. Instead, the Maine courts have held that a trustee seeking relief from an entry of default must meet the "good cause" standard contained in Maine Civil Rule 55(c). See *Levine v. KeyBank Nat'l Ass'n*, 2004 ME 131, ¶ 20, 861 A.2d 678.

¶ 23. Four Maine decisions apply this standard to a financial institution. In *Levine*, the facts were as follows:

> KeyBank presented proof that it maintains a judgment processing system that has a low rate of error. The system is based in the bank's Cleveland office and has eleven employee positions dedicated to processing attachments, including trustee summons, served on KeyBank throughout the United States. The office handles 300 to 1600 attachments per day. At the time of the bank's receipt of the trustee summons in this case, there were eight employees processing attachments because the office had three vacant positions.
>
> An officer at KeyBank's Auburn office was served with Levine's trustee summons on October 24, 2001. He signed the acknowledgment form and faxed the summons to the bank's Cleveland processing facility. KeyBank's

phone log indicates that a fax was sent from Auburn to the Cleveland processing facility's fax line on October 25, 2001. The officer also sent the original summons via KeyBank's internal mail to the processing facility in Cleveland, where it was apparently lost. Michele Dauer, KeyBank's supervisor of judgment processing, stated in her affidavit, "I do not know what happened with this particular Trustee Summons."

*Id.* ¶¶ 17-18. The Maine Supreme Judicial Court upheld the trial court's decision that KeyBank had not established good cause to set aside the default:

An efficient judgment processing system, without more, does not amount to a good excuse. The foundation of a good excuse is a reasonable explanation, which KeyBank failed to provide. For example, the bank offered no explanation for its failure to fill the vacancies in its judgment processing department; nor did it offer an explanation for the disappearance of the summons. Moreover, the bank failed to explain why its Auburn office could not simply answer the trustee process rather than send it to Ohio. The affidavits of the bank's employees offer no explanation whatsoever for KeyBank's failure to respond to the notice of default. The officer in the Auburn office merely stated, "KeyBank has no other information of receiving anything else from the Court or plaintiff regarding this matter between October 24, 2001 and the entry of the order of default on January 2, 2002." In other words, KeyBank offers no reasonable explanation for the lost fax, the lost internal mail, or any other failures of the judgment processing system.

*Id.* ¶ 21 (footnote omitted); see also *Butler v. D/Wave Seafood,* 2002 ME 41, ¶ 18, 791 A.2d 928 (affirming trial court conclusion that KeyBank had not shown good cause to reopen trustee default on grounds that KeyBank gave no reasonable explanation for cause of default, failed to timely respond to two summons, and failed to appear at default hearing despite personal notice from clerk).

¶ 24. A similar fact situation arose in *R.C. Moore, Inc. v. Les-Care Kitchens, Inc.,* 2007 ME 138, 931 A.2d 1081, in which the trial court also found no good cause for providing relief from the

default. The institution involved was also a large national bank, and its position was that it had a good system in place to respond to trustee summons. Relying on *Levine*, the court held that the system alone was not enough. *Id.* ¶¶ 28-29. The court went on to hold:

> The record supports the court's finding that Wachovia failed to offer a reasonable excuse as to why the Wachovia Bank summons was mislaid. A system requiring a trustee summons to pass through four offices in four states over several days before it can be effective to attach an account provides many opportunities for an item to be lost or mislaid. Consequently, the court did not abuse its discretion in denying Wachovia's motion to set aside entry of default.

*Id.* ¶ 29.

¶ 25. On the other hand, a Maine trial court exercised its discretion to set aside a default trustee judgment where it found more grounds than present in *Levine* and *Butler. Spruce v Jackson*, No. CV-01-128, 2004 WL 844180 (Me. Super. Ct. Mar. 22, 2004). It relied in part on KeyBank's high rate of compliance:

> KeyBank's processing system successfully processed the vast majority of the 149,910 documents received in 2001, 12,259 of which were received in July, 2001, the month the trustee summons was apparently served on KeyBank. The error rate of KeyBank's system in 2001 was .006%.

*Id.* at *2. The court noted that the plaintiff had not moved for default against KeyBank for over two years and, by that time, KeyBank was unable to determine why it had failed to file its disclosure in time. *Id.* Under these circumstances, the court granted relief.

¶ 26. The majority responds that the Maine cases arise in situations that are "procedurally different" and, therefore, irrelevant to this case. *Ante,* ¶ 13. This is a quibble. As I state above, I agree that this case should be decided under circumstances similar to those in *Ying Ji*, 2013 VT 81, the main case relied upon by the majority. *Ying Ji* involved a motion to reopen an involuntary dismissal, a form of default judgment, under the standard in Vermont Civil Rule 60(b)(1). The Maine cases arise in the com-

parable situation, where the clerk has entered a default and the trustee seeks to reopen it under Maine Civil Rule 55(c). The difference is particularly a quibble because the presiding judge in this case could have directed the clerk to enter a default judgment pursuant to Vermont Civil Rule 55(b)(2), as apparently the trial judges did in Maine, requiring the trustee to move to set aside the default. Nothing in the majority decision suggests that if there had been a clerk entry of default as authorized by the rule, the judge would have lost the discretionary power to retroactively declare that the trustee's response was timely. Indeed, such a limitation would be inconsistent with the "at any time and for any reason" rationale of the majority decision.

¶ 27. Nor is my position affected by the fact that the Maine legislature changed the Maine statute so it is no longer the same as the Vermont statute. To the extent the statutory modification is relevant, it shows the right way for financial institutions to get relief from a collection procedure they find inconvenient to their operations

¶ 28. My point is that I agree that the bank should have the opportunity to seek relief from the default trustee judgment, but the opportunity should occur through a motion to set aside the judgment under Rule 55(c), and the bank should have to demonstrate good cause or compliance with Rule 60.

¶ 29. My third and final reason is related to the second. This decision sends out exactly the wrong message to financial institutions. Trustee process will work only if banks and other financial institutions adopt systems to respond promptly, accurately, and transparently to trustee process summons. By letting this bank off with no demonstrated showing that it has a system to respond in the future, we are sending the signal that compliance is unimportant. The amount the bank might have to pay, $24,000, is small compared to the savings to creditors that results from compliance. In my judgment, it is the missed opportunity to induce compliance, and not the possibility of one relatively small sanction, that creates inequity.

¶ 30. I am authorized to state that Justice Skoglund joins this dissent.